J-A02039-19

2019 PA Super 282

| | | |
|---|---|---|
| SUSAN CARLINI | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GLENN O. HAWBAKER, INC. | : | |
| | : | |
| Appellant | : | No. 814 MDA 2018 |

Appeal from the Judgment April 20, 2018
In the Court of Common Pleas of Centre County Civil Division at No(s):
2016-3583

| | | |
|---|---|---|
| SUSAN CARLINI | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| GLENN O. HAWBAKER, INC. | : | No. 879 MDA 2018 |

Appeal from the Judgment April 20, 2018
In the Court of Common Pleas of Centre County Civil Division at No(s):
2016-3583

BEFORE: LAZARUS, J., DUBOW, J., and NICHOLS, J.

OPINION BY NICHOLS, J.: **FILED SEPTEMBER 13, 2019**

Appellant/Cross-Appellee Glenn O. Hawbaker, Inc. (Hawbaker) and Appellee/Cross-Appellant Susan Carlini (Carlini) appeal from the judgment entered in favor of Carlini in her actions for wrongful discharge and invasion of privacy. Hawbaker challenges various evidentiary rulings and the amount of damages awarded by the jury. Carlini argues that the trial court erred in refusing to instruct the jury that it could award non-economic compensatory

damages for the wrongful discharge claim. We affirm the jury's verdict as to Hawbaker's liability for Carlini's wrongful discharge and invasion of privacy claims. We also affirm the compensatory damages awarded for the invasion of privacy claim and the economic damages awarded for the wrongful discharge claim. Nevertheless, we vacate the judgment and remand for a new trial limited to the issues of punitive damages and the non-economic damages for the wrongful discharge claim.

The relevant facts and procedural history of this appeal are as follows. Hawbaker employed Carlini as a heavy equipment operator for twenty-four years. On April 7, 2016, Carlini suffered an on-the-job injury while clearing a downed tree from a roadway. Carlini sought workers' compensation benefits in June 2016.

On June 15, 2016, Carlini attended an appointment with Dr. Christopher Varacallo, a physician on Hawbaker's workers' compensation panel. As a member of the panel, Dr. Varacallo was approved to see Hawbaker's employees who suffer on-the-job injuries. Dr. Varacallo diagnosed Carlini with sacroiliac joint pain, acute low back pain, acute left knee pain, and sacroiliitis. Dr. Varacallo approved Carlini for regular activity, and he permitted her to return to work, without restrictions, on June 16, 2016. Dr. Varacallo also ordered Carlini to return to his office for a follow-up appointment on June 30, 2016.

On June 22, 2016, Hawbaker ordered Carlini to travel to Ohio to operate a "rock truck" at a construction site. Carlini had not operated a rock truck

since suffering her injuries, and she informed her supervisor that she would be unable to operate the vehicle due to the pain from her injuries. Hawbaker sent Carlini home and warned her that it would consider her refusal to accept the assignment as an act of insubordination.

Carlini immediately called Dr. Varacallo's office to inform him about her concerns over the work assignment. After the phone call, Dr. Varacallo electronically signed a work status note stating:

> Work Restrictions:
> The patient is permitted to engage in sedentary work activities, which means walking or standing only occasionally, lifting 10 pounds maximum and frequent lifting or carrying of objects such as small tools.
>
> Comments:
> Sedentary duty until re-evaluated after EMG. Please allow position changes. [Follow-up appointment] 6/30/16 @ 3:15pm.

R.R. at 1385a.[1]

Also on June 22, 2016, Dr. Varacallo's office forwarded the new work status restriction to Ashlee Thompson, the medical case manager working with Hawbaker to coordinate Carlini's medical care for the workers' compensation claim. Thompson then informed Hawbaker about the work status restriction. Hawbaker personnel responded by asking Thompson to call Dr. Varacallo's office and request that Carlini's work status not be changed until after the doctor evaluated Carlini at the follow-up appointment.

_____

[1] We cite to the documents contained in the reproduced record for the convenience of the parties.

At approximately 3:00 p.m. that same day, Thompson contacted Dr. Varacallo's office to insist that the doctor conduct the follow-up appointment before changing Carlini's work status. The doctor's office acquiesced and changed Carlini's follow-up appointment to June 23, 2016 at 10:15 a.m. The doctor's office also voided the sedentary duty restriction pending the results of the follow-up appointment.

After learning about the new appointment time, Hawbaker contacted Carlini and informed her that she needed to attend a meeting at Hawbaker's office at 8:00 a.m. the next morning, before going to the follow-up appointment. Carlini attended the 8:00 a.m. meeting, at which time Hawbaker terminated her for insubordination.

On September 23, 2016, Carlini filed a complaint against Hawbaker, raising a wrongful discharge claim. The complaint alleged that Hawbaker fired Carlini in retaliation for exercising her workers' compensation rights. Carlini filed an amended complaint on March 6, 2017, which included an invasion of privacy claim. In the amended complaint, Carlini alleged that Hawbaker violated her privacy rights by contacting Dr. Varacallo to change the date of her follow-up appointment.[2]

_____

[2] After Carlini filed her complaints, the parties entered into a "compromise and release" agreement to settle Carlini's workers' compensation claim for $52,500. The agreement included a lump-sum payment of $40,500. The agreement also contained the following language regarding Carlini's other claims against Hawbaker:

The parties subsequently filed pretrial motions *in limine* to address various evidentiary issues. Among other things, Hawbaker sought to bifurcate the trial and preclude evidence of its net worth, unless the jury determined that punitive damages were warranted. Carlini sought to prelude evidence of the compromise and release agreement, which she deemed irrelevant to her claims. The trial court denied Hawbaker's motion *in limine* and granted Carlini's motion *in limine*.

Prior to trial, the parties also submitted proposed jury instructions. Carlini requested that the trial court instruct the jury about the awarding of non-economic damages for the wrongful discharge claim. Specifically, Carlini wanted the trial court to instruct the jury that if it found in her favor on the wrongful discharge claim, Carlini was entitled "to be compensated for the suffering, inconvenience, embarrassment and mental anguish she has endured and will endure as a result of her termination." R.R. at 760a.

---

The parties agree and understand that this Compromise & Release Agreement in no way releases [Hawbaker] from any claims, liability and/or causes of action related to [Carlini's] employment other than workers' compensation benefits. This Compromise & Release Agreement shall have no effect on the lawsuit currently filed in the Court of Common Pleas of Centre County . . . or the claim filed by [Carlini] with the Equal Employment Opportunity Commission, or any other claim of wrongful termination or employment discrimination as [Carlini] does not release or compromise any such claims, causes of action or lawsuits by entering into this Agreement.

R.R. at 72a.

- 5 -

Hawbaker objected to Carlini's proposed jury instruction, and the trial court sustained Hawbaker's objection.

The matter proceeded to a jury trial on December 18, 2017. On December 20, 2017, the jury found in favor of Carlini on both her wrongful discharge and invasion of privacy claims. In a special interrogatory, the jury determined that Carlini's filing of a workers' compensation claim was the factual cause of her firing. The jury also determined that Hawbaker's invasion of privacy was a factual cause of harm to Carlini. For the wrongful discharge claim, the jury awarded economic damages (lost wages and benefits) in the amount of $260,095.68, and punitive damages in the amount of $1,000,000. For the invasion of privacy claim, the jury awarded no compensatory damages and punitive damages in the amount of $1,000,000.

Both parties filed post-trial motions. Hawbaker's motion argued that the trial court erred by (1) refusing to grant bifurcation; (2) precluding evidence of the parties' compromise and release agreement; (3) admitting evidence of Hawbaker's net worth;[3] and (4) failing to mold the verdict to

---

[3] Regarding the evidence of its net worth, Hawbaker challenged Carlini's examination of its regional vice president, Michael Hall. Specifically, Carlini questioned Hall about Hawbaker's 2015-2016 financial statement, which the trial court admitted as Exhibit 53. Hawbaker objected to Hall testifying about the information in the financial records, claiming that Hall was not qualified to discuss Hawbaker's finances. R.R. at 1077a-78a. Hawbaker also claimed that its accounting firm, Baker Tilly, prepared the financial records, and Carlini should have presented a Baker Tilly accountant to authenticate the financial records prior to admission. *Id.* at 1078a-79a. The court overruled Hawbaker's objections. *Id.* at 1080a. Thereafter, Hall read numbers from the financial records indicating Hawbaker's net worth. *Id.* at 1081a-82a.

reflect the amount of the workers' compensation settlement. Hawbaker also claimed that the jury's award of $2,260,095.68 "was excessive and shocks the judicial conscience and is so palpably and shockingly offensive as to warrant a substantial remittitur." R.R. at 1634a. Hawbaker requested relief in the form of (1) a new trial; (2) remittitur; (3) an order molding the verdict; and (4) any "further and different relief as the [trial c]ourt deems just and proper." *Id.* at 1613a.

Carlini's post-trial motion complained that the trial court failed to provide a jury instruction concerning non-economic damages incurred as a result of the wrongful discharge. Carlini also asserted that the jury interrogatories should have included a line for the jury to award non-economic damages for the wrongful discharge. Carlini concluded that she was "entitled to a new trial solely to determine the amount of non-economic damages caused by [Hawbaker's] wrongful discharge." *Id.* at 1747a.

By opinion and order entered April 13, 2018, the trial court denied the parties' post-trial motions. On April 20, 2018, Carlini filed a *praecipe* for entry of judgment on the jury's verdict. Hawbaker timely filed a notice of appeal on May 17, 2018. On May 24, 2018, Carlini timely filed her notice of cross-appeal. The parties timely filed court-ordered Rule 1925(b) concise statements of errors complained of on appeal. The trial court did not file a responsive opinion. Instead, the trial court relied on its prior opinions disposing of the parties' pretrial and post-trial motions.

At docket number 814 MDA 2018, Hawbaker raises six issues on appeal that we have reordered as follows:

> 1. Did the trial court commit reversible error by denying Hawbaker's *in limine* motion to bifurcate the trial (even on a limited basis) and to preclude Carlini from introducing evidence of Hawbaker's net worth unless and until the jury determined punitive damages were warranted?
>
> 2. Did the trial court commit reversible error by denying Hawbaker's post-trial request to mold the compensatory damages award to reflect those amounts paid to Carlini under her workers' compensation settlement?
>
> 3. Did the trial court commit reversible error by precluding Hawbaker from introducing evidence of a workers' compensation settlement entered into by the parties at trial after Carlini "opened the door?"
>
> 4. Did the trial court commit reversible error by overruling Hawbaker's objection at trial to the introduction of its financial condition through impermissible hearsay documents and a witness who lacked sufficient personal knowledge to establish a foundation?
>
> 5. Did the trial court commit reversible error by denying Hawbaker's request for post-trial relief from the jury's punitive damages award that shocks the conscience, is unconstitutionally excessive under federal law and Pennsylvania law, and could only be the result of passion and prejudice?
>
> 6. Did the trial court commit reversible error by denying Hawbaker's post-trial request for remittitur of the jury verdict based on a punitive damages award that shocks the conscience, is unconstitutionally excessive under federal law and Pennsylvania law, and could only be the result of passion and prejudice?

Hawbaker's Brief at 6-7.

In its first issue, Hawbaker claims that evidence of its net worth "served no legitimate purpose to either party (or the jury) during the liability phase of

trial." ***Id.*** at 32. Hawbaker asserts that evidence of its net worth "could only prejudice the jury into making a decision based on Hawbaker's ability to pay," and such evidence became relevant only after liability was established. ***Id.*** at 33. Hawbaker also complains that the court's failure to bifurcate "allow[ed] Carlini to introduce and discuss Hawbaker's financial condition whenever it served her best[,] without any regard to its irrelevance or prejudicial impact." ***Id.*** Hawbaker emphasizes that Carlini's references to Hawbaker's net worth, particularly during opening statements, served "the sole purpose of anchoring the jury and inciting passion before Hawbaker could even begin to defend itself." ***Id.*** at 34. For these reasons, Hawbaker insists that the trial court should have granted its request to bifurcate the proceedings. ***Id.*** at 37.

"The decision whether to bifurcate is entrusted to the sound discretion of the trial court, which is in the best position to evaluate the necessity for such measures. Thus, the appellate court must determine if the trial court's bifurcation decision is a reasonable exercise of its discretion in this respect." ***Castellani v. Scranton Times, L.P.***, 161 A.3d 285, 297 (Pa. Super. 2017) (citations and quotation marks omitted). "An abuse of discretion generally will not be found unless there is a showing of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous." ***Krishnan v. Cutler Grp., Inc.***, 171 A.3d 856, 899 (Pa. Super. 2017) (citation omitted).

"The court, in furtherance of convenience or to avoid prejudice, may, on its own motion or on motion of any party, order a separate trial of any cause

of action, claim, or counterclaim, set-off, or cross-suit, or of any separate issue . . . ." Pa.R.C.P. 213(b). "Our Supreme Court has observed that bifurcation should be carefully and cautiously applied and be utilized only in a case and at a juncture where informed judgment impels the court to conclude that application of the rule will manifestly promote convenience and/or actually avoid prejudice." **Castellani**, 161 A.3d at 297 (citation and quotation marks omitted).

"In determining whether to bifurcate a trial, the trial judge should be alert to the danger that evidence relevant to both issues may be offered at only one-half of the trial. This hazard necessitates the determination that the issues of liability and damages are totally independent prior to bifurcation." **Stevenson v. General Motors Corp.**, 521 A.2d 413, 419 (Pa. 1987).

Instantly, the trial court explained its denial of Hawbaker's request for bifurcation as follows:

> The [c]ourt found that the knowledge of [Hawbaker's] corporation, including the size and general hierarchy of the corporation, the number of employees, their available resources, and net worth were significantly more relevant than prejudicial for the jury to determine whether [Hawbaker] acted intentionally in this matter. Particularly, evidence of [Hawbaker's] available resources and overall net worth would allow the jury to determine if [Hawbaker] intentionally handled the matter as [Carlini] alleged despite knowing other options were available. Furthermore, any possible prejudice of allowing a statement of net worth was lessened when the jury was presented with other evidence of [Hawbaker's] wealth, including the territorial scope of its operations, number of employees, a salary for an average employee, and discussion of the equipment owned by [Hawbaker].

Op. and Order, 4/13/18, at 6-7.

Here, the trial court analyzed the evidence regarding Hawbaker's net worth and determined that such evidence was relevant. ***See Stevenson***, 521 A.2d at 419. We acknowledge that evidence of Hawbaker's financial resources provided additional context for the scope and sophistication of Hawbaker's business operations, which could assist the jury in determining the validity of Carlini's wrongful discharge claim. Further, Hawbaker has not demonstrated that the admission of this evidence resulted in prejudice as to the jury's findings on liability, particularly where other evidence provided ample support for the verdict on Carlini's underlying claims. ***See Castellani***, 161 A.3d at 297. On this record, Hawbaker has not established that the trial court's decision to forego bifurcation was an unreasonable exercise of its discretion.[4]

***Id.***

In its second and third issues, Hawbaker contends that the trial court "abused its discretion by granting Carlini's motion *in limine* and precluding Hawbaker from introducing evidence of the [c]ompromise and [r]elease at

---

[4] Moreover, the trial court instructed the jury that it could consider Hawbaker's wealth in determining the amount of punitive damages "insofar as it's relevant in fixing an amount that will punish it and deter it and others from like conduct in the future." R.R. at 1281a. This instruction was consistent with the relevant law concerning punitive damages. ***See Sprague v. Walter***, 656 A.2d 890, 923 (Pa. Super. 1995) (holding that the trial court did not err in permitting the plaintiff to introduce stipulated evidence of the defendant's net worth during the liability phase of a trial where the plaintiff sought punitive damages; approving of a jury instruction on punitive damages that stated, "[Y]ou may award punitive damages as well as any compensatory damages in order to punish the defendant for his conduct and to deter the defendant and others from the commission of like acts").

trial." Hawbaker's Brief at 47. Hawbaker asserts that the court "compounded that error at trial when it acknowledged that Carlini had 'opened the door' to the [c]ompromise and [r]elease becoming relevant, only to again preclude Hawbaker from introducing it into the record." *Id.*

Hawbaker insists that the trial court should have allowed it to inform the jury that Carlini agreed to a lump-sum payment as compensation for lost wages, which "are the **same exact** lost wages the jury awarded Carlini after it concluded that Hawbaker had wrongfully terminated her employment." *Id.* at 47-48 (emphasis in original). Hawbaker concludes the trial court "abused its discretion and [denied] Hawbaker the opportunity to introduce that relevant evidence at trial so as to provide the jury with a complete story about Carlini's workers' compensation claim." *Id.* at 48. Further, Hawbaker requests that "this Court reverse the trial court order denying its request to mold the verdict and enter an order molding Carlini's compensatory damages award to reflect the $40,500-lump-sum as a setoff." *Id.* at 50.

"Admission of evidence is within the sound discretion of the trial court and a trial court's rulings on the admission of evidence will not be overturned absent an abuse of discretion or misapplication of law." *Maisano v. Avery*, 204 A.3d 515, 523 (Pa. Super. 2019) (citation omitted). "To constitute reversible error, a ruling on evidence must be shown not only to have been erroneous but harmful to the party complaining." *Brown v. Halpern*, 202 A.3d 687, 708 (Pa. Super. 2019) (citation omitted).

- 12 -

"Admissibility depends on relevance and probative value. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact." **Smith v. Morrison**, 47 A.3d 131, 137 (Pa. Super. 2012) (citation omitted).

> Evidence, even if relevant, may be excluded if its probative value is outweighed by the potential prejudice.
>
> Unfair prejudice supporting exclusion of relevant evidence means a tendency to suggest decision on an improper basis or divert the jury's attention away from its duty of weighing the evidence impartially. The function of the trial court is to balance the alleged prejudicial effect of the evidence against its probative value and it is not for an appellate court to usurp that function.

**Id.** (citations and quotation marks omitted).

Additionally, "It is well settled that a trial court in this Commonwealth has the power to mold a jury's verdict to conform to the clear intent of the jury." **Mendralla v. Weaver Corp.**, 703 A.2d 480, 485 (Pa. Super. 1997) (*en banc*) (citation omitted).

> The power of a trial judge to exercise his discretion in molding a verdict to fit the expressed desires of the jury is a corner-stone of the jury system. Moreover, verdicts which are not technically correct in form but which manifest a clear intent on the part of the jury may be corrected without resort to further jury deliberations or the grant of a new trial.

**Mirizio v. Joseph**, 4 A.3d 1073, 1088 (Pa. Super. 2010) (citation and brackets omitted).

Instantly, the trial court precluded evidence concerning the compromise and release agreement, concluding that such evidence would be significantly

more prejudicial than relevant. *See* Op. and Order at 5. Regarding Hawbaker's allegation that Carlini "opened the door" to the agreement becoming relevant, the trial court noted that it "addressed issues as they arose. . . ."[5] *Id.* In light of the agreement's express language indicating that it "shall have no effect on" Carlini's wrongful discharge and invasion of privacy lawsuits, we conclude that the trial court's evidentiary rulings correctly balanced the alleged prejudicial effect of the evidence against its probative value. *See Smith*, 47 A.3d at 137. Further, the jury's compensatory damage award did not require molding to reflect the lump-sum payment under the compromise and release agreement. *See Mirizio*, 4 A.3d at 1088.

In its fourth issue, Hawbaker contends that Carlini's counsel questioned Hall about the financial records prepared by Hawbaker's accountant. Hawbaker's Brief at 35. Hawbaker argues that Hall "lacked sufficient, personal knowledge to authenticate" the financial records, which amounted to

_____

[5] Specifically, Carlini's counsel cross-examined Elaine Lang, Hawbaker's risk management specialist, asking the following question: "[A]ny medical treatment after you fired her, since you denied her workers' compensation claim, [Carlini] was going to have to schedule those things on her own and pay for them, right?" R.R. at 995a. Hawbaker's counsel immediately objected, arguing that this question had opened the door for him to address the workers' compensation settlement. *Id.* at 995a-96a. Carlini's counsel offered to ask a follow-up question to establish that the medical bills were paid for, and he agreed not to ask additional questions about the topic. *Id.* at 997a. The trial court agreed with this resolution. *Id.* at 999a. Following the sidebar, the trial court sustained the objection from Hawbaker's counsel. *Id.* at 1000a. Carlini's counsel then stated, "I'm going to make something clear. Ultimately, all of Ms. Carlini's medical expenses related to her work injury got paid; correct?" The witness confirmed that the medical bills were paid, and Carlini's counsel moved on to a different topic. *Id.*

impermissible hearsay evidence. *Id.* Hawbaker maintains that Hall "had never seen the [financial] documents before that day, was not an accountant by trade (or otherwise qualified to assess a company's net worth), and had never before even calculated a company's net worth." *Id.* (citation and footnote omitted). Hawbaker concludes that the trial court erred in admitting evidence of its net worth through Hall's testimony and the financial records. *Id.* at 39-40.

"It is well-settled that when punitive damages are at issue in a case, the jury must consider not only the character of the act underlying the claim and the harm suffered by the plaintiff, but also the wealth of the defendant." *Sprague*, 656 A.2d at 920 (citations omitted). Net worth is a valid measure of a defendant's wealth.[6] *See id.*

Further, "[t]he Pennsylvania Rules of Evidence define 'hearsay' as an out of court statement offered in court for the truth of the matter asserted. A writing constitutes a 'statement' as defined by Rule 801(a). Generally, hearsay is inadmissible at trial unless it falls under an exception provided by the Rules." *MB Fin. Bank v. Rao*, 201 A.3d 784, 788 (Pa. Super. 2018) (citations omitted). Rule 803 provides an exception governing the admission of a recorded act, event or condition if:

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;

---

[6] The "term 'net worth' merely signifies [the] remainder after deduction of liabilities from assets." *Sprague*, 656 A.2d at 920 (citing *W.H. Miner, Inc. v. Peerless Equip. Co.*, 115 F.2d 650, 655 (7th Cir. 1940)).

(B) the record was kept in the course of a regularly conducted activity of a "business", which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Pa.R.E. 803(6). Additionally, the Uniform Business Records as Evidence Act states, in relevant part:

A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.

42 Pa.C.S. § 6108(b). "While a qualified witness need not have personal knowledge, the individual must be able to 'provide sufficient information relating to the preparation and maintenance of the records to justify a presumption of trustworthiness . . . .'" *Keystone Dedicated Logistics, LLC v. JGB Enters., Inc.*, 77 A.3d 1, 13 (Pa. Super. 2013) (citation omitted).

Rule 901 governs the authentication of evidence, in pertinent part, as follows:

**(a) In General.** To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce

evidence sufficient to support a finding that the item is what the proponent claims it is.

**(b) Examples.** The following are examples only—not a complete list—of evidence that satisfies the requirement:

(1) *Testimony of a Witness with Knowledge.* Testimony that an item is what it is claimed to be.

Pa.R.E. 901(a), (b)(1).

Instantly, the trial court concluded that it did not err in admitting evidence of Hawbaker's net worth through Hall's testimony and the admission of the financial records:

Michael Hall was a regional vice president [at Hawbaker]. He was asked to read numbers presented to him and determine [Hawbaker's] net worth by subtracting one number from another number. The [c]ourt is confident that Michael Hall was capable and qualified to answer a basic subtraction question. The [c]ourt takes judicial notice that generally net worth can be determined by subtracting liabilities from assets. [Hawbaker] had opportunity at trial to offer evidence of a different value or process to determine net worth.

[Hawbaker] also argues the [financial] document was inadmissible hearsay. The main issue in this regard is [Carlini's] counsel's failure to establish the information necessary under Pa.R.E. 803(6). The [financial] document was a compilation of records regularly kept in the course of [Hawbaker's] business. [Hawbaker] represented in its answer to punitive damage interrogatories that the [financial] document accurately reflected its total assets and liabilities. The authenticity and accuracy of the [financial] document was not in question by either party at the time of trial or during the hearing for post-trial motions.

\* \* \*

The [alleged] error was [Carlini's] failure to establish the necessary information as per Pa.R.E. 803(6). **The proper thing would have been to go through the information as required in Pa.R.E. 803(6).**

- 17 -

\*    \*    \*

> The [c]ourt did not prejudice [Hawbaker] by allowing the introduction of the evidence at trial since the [c]ourt determined that the document would ultimately be accepted as evidence.

Op. and Order at 3-4 (citation omitted) (emphasis added).

Significantly, the trial court conceded that it should have examined the admissibility of the financial records under Rule 803(6).  To the extent the trial court noted that Hawbaker effectively vouched for the accuracy of the financial records in its answer to interrogatories, this action alone did not provide an adequate basis to admit the financial records.  **See Keystone Dedicated Logistics**, 77 A.3d at 11-12 (disagreeing with the trial court's conclusion that it properly admitted invoices into evidence merely because the defendant had provided them during discovery; "[s]uch a conclusion ignores that the discovery of documents and proof of their reliability at trial are two different matters").

Regarding the authentication of Hawbaker's financial records, Hall initially testified that he is a regional vice president in charge of the "DuBois region of Hawbaker's construction."[7]   R.R. at 1077a.  Hall provided no additional information relating to Baker Tilly's preparation and maintenance of the financial records.  Thereafter, Carlini's counsel presented Hall with the financial records and asked him to read aloud information directly from the records.  **Id.** at 1081a-82a.  Absent more, there is no indication that Hall

---

[7] Hall later testified that he possesses a degree in civil engineering.  R.R. at 1092a.

- 18 -

possessed knowledge sufficient to authenticate financial records prepared by Baker Tilly, and a presumption of the records' trustworthiness was not justified.[8] ***See Keystone Dedicated Logistics***, 77 A.3d at 13; Pa.R.E. 901(a), (b)(1).

On this record, Carlini did not present testimony to establish that the financial records satisfied the business record exception to the hearsay rule, and the trial court abused its discretion in permitting the admission of the financial records and testimony regarding Hawbaker's net worth. ***See Maisano***, 204 A.3d at 523; ***Brown***, 202 A.3d at 708; ***see also Keystone Dedicated Logistics***, 77 A.3d at 12 (vacating the judgment and remanding for a new trial on damages where, among other things, the trial court abused its discretion in admitting invoices that were not properly authenticated at trial). Because this evidence was the only evidence on which the jury could have based its calculation of the punitive damages, Hawbaker is entitled to a new trial limited to the issue of punitive damages for the wrongful discharge and invasion of privacy claims.[9]

---

[8] Hall's testimony revealed his apparent discomfort with testifying about the information in the financial records. At one point, Carlini's counsel asked Hall to confirm a revenue figure listed in the document. Hall stated, "That appears to be what [the document] says. But I'm not an accountant, sir." R.R. at 1081a. After Carlini's counsel concluded his questioning, Hawbaker's counsel established that Hall does not possess an accounting degree, he had not seen the financial statements before taking the witness stand, and he had never before calculated a company's net worth. ***Id.*** at 1092a.

[9] Due to our disposition, we need not address Hawbaker's final two issues challenging the amount of the punitive damage awards.

At docket number 879 MDA 2018, Carlini raises one issue for our review:

Whether the trial court committed an error of law when it denied [Carlini's] motion for post-trial relief in the form of a new trial to determine the appropriate amount of non-economic compensatory damages, in addition to the economic compensatory damages and punitive damages already awarded, when evidence of non-economic harm was admitted into evidence but the trial court refused to instruct the jury on non-economic compensatory damages or allow the jury to award non-economic compensatory damages caused by [Carlini's] wrongful discharge.

Carlini's Brief at 4.

Carlini contends that wrongful discharge is a tort, and "tort law allows for recovery of compensatory damages in the form of both economic and non-economic damages." *Id.* at 19. Carlini asserts that "compensatory damages are such damages as measure the actual loss," and "our jurisprudence has long recognized non-economic losses are actual losses." *Id.* at 16, 17 (citations omitted). In support of her assertion, Carlini cites multiple cases from Pennsylvania and other jurisdictions where plaintiffs recovered economic and non-economic damages for wrongful discharge. *Id.* at 20-21, 23-26.

Carlini also emphasizes that she presented ample evidence of mental anguish and emotional distress caused by her wrongful termination. *Id.* at 21. In light of this evidence, Carlini argues that the trial court "committed an error of law by ruling that compensatory damages in wrongful discharge cases are limited to economic damages," and this error caused Carlini prejudice by "precluding the jury from fully compensating [Carlini] for actual harm caused by [Hawbaker]." *Id.* at 22. Carlini concludes that this Court must reverse

the order denying her post-trial motion and "remand the case to the trial court for a new trial limited to the amount of non-economic damages to which [Carlini] is entitled." *Id.* at 27.

The following standard of review applies to our review of the trial court's denial of Carlini's post-trial motion:

> We will reverse a trial court's decision to deny a motion for a new trial only if the trial court abused its discretion. We must review the court's alleged mistake and determine whether the court erred and, if so, whether the error resulted in prejudice necessitating a new trial. If the alleged mistake concerned an error of law, we will scrutinize for legal error. Once we determine whether an error occurred, we must then determine whether the trial court abused its discretion in ruling on the request for a new trial.

*Stalsitz v. Allentown Hosp.*, 814 A.2d 766, 771 (Pa. Super. 2002) (citations and quotation marks omitted).

> [T]he standard of review for [a jury charge] issue is one of abuse of discretion. Our courts have made clear that an appellant must make a timely and specific objection to a jury instruction to preserve for review a claim that the jury charge was legally or factually flawed.
>
> > In reviewing a claim regarding error with respect to a specific jury charge, we must view the charge in its entirety, taking into consideration all the evidence of record to determine whether or not error was committed. If we find that error was committed, we must then determine whether that error was prejudicial to the complaining party. Error will be found where the jury was probably misled by what the trial judge charged or where there was an omission in the charge which amounts to fundamental error.
>
> Similarly:
>
> > Error in a charge is sufficient ground for a new trial, if the charge as a whole is inadequate or not clear or has a

- 21 -

tendency to mislead or confuse rather than clarify a material issue. A charge will be found adequate unless the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said or unless there is an omission in the charge which amounts to fundamental error. A reviewing court will not grant a new trial on the ground of inadequacy of the charge unless there is a prejudicial omission of something basic or fundamental.

Finally,

The court is vested with substantial discretion in fashioning the charge and may select its own language cognizant of the need to adequately apprise the jury of the law as it applies to the evidence adduced at trial. Unless the language the court chose incorrectly states the law or mischaracterizes the evidence in a way that prejudiced the jury's consideration and thereby undermined the accuracy of the verdict, we will not interfere with the court's exercise of discretion.

**Braun v. Wal-Mart Stores, Inc.**, 24 A.3d 875, 968 (Pa. Super. 2011) (*per curiam*) (citations and quotation marks omitted).

"In this Commonwealth, this Court has consistently held that the purpose of damages is to compensate victims to the full extent of the loss sustained as a direct result of the injury." **Crespo v. Hughes**, 167 A.3d 168, 178 (Pa. Super. 2017) (citation omitted), *appeal denied*, 184 A.3d 146 (Pa. 2018). "Compensatory damages are damages awarded to a person as compensation, indemnity or restitution for harm sustained by [her]." **Raynor v. D'Annunzio**, 205 A.3d 1252, 1264 (Pa. Super. 2019) (citations and quotation marks omitted).

"Compensatory damages that may be awarded without proof of pecuniary loss include compensation . . . for emotional distress." Restatement

(Second) of Torts § 905 (Am. Law Inst. 1975); *see also Bailets v. Pennsylvania Tpk. Comm'n*, 181 A.3d 324, 333 (Pa. 2018) (stating that "our jurisprudence has long recognized non-economic losses are actual losses" (citations omitted)). "Damages for nonpecuniary harm are most frequently given in actions for bodily contact and harm to reputation . . . , but they may also be given in actions for other types of harm[.]" Restatement (Second) of Torts § 905 cmt. a (citations omitted).

"In Pennsylvania[,] one who is liable to another for interference with a contract is liable for damages for the emotional distress which is reasonably expected to result from the wrongful interference." *Kilpatrick v. Delaware Cty. S.C.P.A.*, 632 F. Supp. 542, 550 (E.D. Pa. 1986) (citation omitted);[10] *see also Pelagatti v. Cohen*, 536 A.2d 1337, 1343 (Pa. 1987) (quoting the

---

[10] The **Kilpatrick** Court noted that in "evaluating a wrongful termination claim, Pennsylvania courts weigh several factors, balancing the employee's interest in making a living, the employer's interest in running its business, its motive in terminating the employee, its manner of effecting the termination and any social interests or public policies that may be implicated in the discharge." **Kilpatrick**, 632 F. Supp. at 545 (citing **Yaindl v. Ingersoll-Rand Co.**, 422 A.2d 611, 620 (Pa. Super. 1980), *abrogation on other grounds recognized in* **Yetter v. Ward Trucking Corp.**, 585 A.2d 1022 (Pa. Super. 1991)). According to the **Kilpatrick** Court, "[i]n **Yaindl**[,] the court held that the factors which should be weighed when evaluating a claim for wrongful termination were identical to the factors considered relevant to a claim of intentional interference with the performance of a contract." **Id.** at 550 (citation omitted). Although "absent a United States Supreme Court pronouncement, the decisions of federal courts are not binding on Pennsylvania state courts, even when a federal question is involved," we may rely on their reasoning to the extent we find it persuasive. **See NASDAQ OMX PHLX, Inc. v. PennMont Secs.**, 52 A.3d 296, 303 (Pa. Super. 2012) (citation omitted).

Restatement (Second) of Torts for the proposition that "actual damages" for interference with a contract include, among other things, emotional distress if it is reasonably to be expected to result from the interference). "The victim of a wrongful termination, therefore, also should be entitled to recover damages for emotional distress reasonably expected to result from the wrongful discharge." *Kilpatrick*, 632 F. Supp. at 550.

Instantly, the trial court denied Carlini's request for a jury instruction concerning non-economic damages incurred as result of the wrongful discharge, noting that "[t]he cases relied on by [Carlini] either do not directly discuss what non-economic damages are permitted in a wrongful discharge award or are not controlling in this matter since they are from different jurisdictions."[11] Op. and Order at 11. The trial court, however, failed to acknowledge the theoretical underpinnings for the award of non-economic

_____

[11] Carlini's brief in support of her post-trial motion analyzed two Pennsylvania cases, *Signora v. Liberty Travel, Inc.*, 886 A.2d 284, 297-98 (Pa. Super. 2005) (concluding that the plaintiff/appellant in a wrongful discharge action was not entitled to relief on her claim that the jury was obligated to award her some amount of damages for past lost earnings and lost earning capacity, future lost earnings and lost earning capacity, damaged reputation and loss of occupational standing, and loss of enjoyment of life; although this Court noted that jury did award the plaintiff in excess of $127,000 in compensatory damages for emotional distress, aggravation, inconvenience, embarrassment and humiliation, the propriety of this award was not at issue on appeal), and *Reuther v. Fowler & Williams, Inc.*, 386 A.2d 119, 121-22 (Pa. Super. 1978) (vacating the trial court's entry of compulsory nonsuit in a case where the plaintiff/appellant sued his former employer in trespass, alleging that he had been wrongfully discharged in retaliation for taking time off from work for jury duty). *See* R.R. at 1754a-57a. Additionally, Carlini cited several cases from other states. *Id.* at 1755a-56a.

damages.  Based upon the foregoing, we conclude that the victim of a wrongful discharge is entitled to recover damages for emotional distress that can be reasonably expected to result from the wrongful discharge.  **See Kilpatrick**, 632 F. Supp. at 550; Restatement (Second) of Torts § 905 cmt. a.  Because the trial court committed an error of law by failing to instruct the jury that it could award non-economic damages under such circumstances, the court abused its discretion in denying Carlini's post-trial motion.  **See Stalsitz**, 814 A.2d at 771.  Therefore, Carlini is entitled to a new trial limited to the issue of compensatory damages for the wrongful discharge claim.

Accordingly, we affirm the jury's verdict as to Hawbaker's liability for Carlini's wrongful discharge and invasion of privacy claims.  We also affirm the compensatory damages awarded for the invasion of privacy claim and the economic damages awarded for the wrongful discharge claim.  We vacate the judgment and remand for a new trial limited to the issues of punitive damages and the non-economic damages for the wrongful discharge claim.

Judgment vacated.  Case remanded with instructions.  Jurisdiction is relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/13/2019

- 25 -