J-A21018-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COURTNEY SLADEK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANDREW CANALE | : | No. 3153 EDA 2023 |

Appeal from the Judgment Entered November 15, 2023
In the Court of Common Pleas of Delaware County Civil Division at
No(s): CV-2020-002451

BEFORE: KUNSELMAN, J., NICHOLS, J., and BECK, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED DECEMBER 31, 2024**

Appellant Courtney Sladek appeals from the judgment[1] entered after a jury found in her favor and against Appellee Andrew Canale. Appellant argues that the trial court provided incorrect jury instructions, the trial court erred in denying Appellant's request for a new trial based on an inadequate verdict, and the verdict was against the weight of the evidence. We affirm.

_____

[1] Appellant took this appeal from the November 15, 2023 order denying her post-trial motion. The trial court entered judgment on the same day. We have amended the caption of this appeal to reflect that this appeal properly lies from the final judgment, not the trial court's order disposing of post-trial motions. ***See Johnston the Florist, Inc. v. TEDCO Const. Corp.***, 657 A.2d 511, 514 (Pa. Super. 1995) (*en banc*) (noting that "an appeal to this Court can only lie from judgments entered subsequent to the trial court's disposition of any post-verdict motions, not from the order denying post-trial motions" (citations omitted)).

The trial court summarized the facts of this appeal as follows:

[Appellant] filed a complaint on or about March 11, 2020 alleging, among other things, that [Appellee] was negligent and in violation of Pennsylvania's Dog Law after she was bitten by [Appellee's] dog. At the time of the incident, Appellant was a tenant at [Appellee's] rental property located at 328 North Fairview Road in Woodlyn, Delaware County, Pennsylvania.

\* \* \*

At trial, the evidence established that on June 21, 2019, Appellant suffered wounds to her hand after she was bitten by [Appellee's] dog. Conflicting evidence was presented regarding the location of the dog prior to the attack. According to Appellant, the dog was being held by [Appellee's] girlfriend in the driveway prior to the attack. According to [Appellee] the dog was tethered to a tree in the yard at the time of the incident. [Appellee] described the leash as "two connected leash [sic] at approximately 25 foot length each." [Appellee] testified that he would sometimes hold the dog back when Appellant and her family was around.

According to the evidence presented at trial, Appellant entered a lease agreement with Bruce Goldman of Rise Up Realty on or about January 20, 2018 for the rental of a duplex unit located at 328 North Fairview Road. At the time she moved in there were renters next door, but they moved out shortly after she moved in.

[Appellee] testified that he purchased the house in August of 2018, when Appellant was already a tenant. Appellant testified that she was told that [Appellee] had purchased the property and that she was told to send her rent checks to him. Following his purchase of the property, [Appellee] moved into the other duplex unit and he rescued a dog two to three weeks later. [Appellee] admitted at trial that his dog bit a neighbor several months prior to the incident on June 21, 2019.

According to [Appellee], he was standing at the entrance of the driveway washing his truck when Appellant arrived home on June 21, 2019. He moved his car to the rear of the property so that she could park and observed his dog run up to the Appellant. He testified that he observed the Appellant flail her arms. When he realized that the dog had bitten her, he ran into the house to grab a towel, applied it to her hand, and took her to the hospital.

- 2 -

Appellant testified that after the dog bit her [Appellee's] girlfriend grabbed the dog and screamed to him that she had been bit[ten].

Appellant explained at trial that her means of ingress and egress to her apartment was through the back door of the building, which was accessed only by walking through the backyard where the dog had been at the time of the incident. Appellant explained that the tenants of the property shared the yard and the driveway. Testimony at trial revealed that Appellant also could have entered the property through the front door. According to [Appellee], it would have been possible for the Appellant to have avoided the dog altogether by entering her unit through the front door of the property.

Appellant testified that the dog was typically tied up outside of the property and that his leash was long enough that he had a large range to walk around the property. [] Appellant testified that she feared the dog. According to Appellant she stopped letting her dogs out in the backyard because she was afraid that [Appellee's] dog would injure them. According to Appellant, [Appellee] was aware that the dog had been aggressive towards her and her dogs. [Appellee] denied that Appellant had expressed any concerns related to his dog prior to the incident.

Appellant went to [the] emergency room at Taylor Hospital for treatment following the dog bite. She felt very lightheaded and was in shock. She received stitches and was released that same day. Her injury required follow up appointments and Appellant ultimately had hand surgery performed by Dr. Adam Strohl on July 11, 2019. At trial Appellant testified that she was able to regain full mobility of her hand after the surgery but explained that she still suffers from difficulty typing and with various activities because the injury occurred to her dominant hand Appellant testified that she still suffers from soreness and pain when she uses her hand for too long and explained that she is very self-conscious about her scar.

. . . Dr. [Asif] Ilyas testified regarding [Appellant's] injuries and concluded that Appellant "had a fairly good outcome, even though she has permanent problems." Appellant did not require any physical therapy following the surgery.

Appellant testified that she remained at the property for several months while looking for alternate housing after the incident. She moved out of the apartment around September 1, 2019 and submitted a written request for the return of her security deposit,

but it was not tendered by [Appellee]. [Appellee] testified that Appellant left the apartment in an unclean condition and testified that she was not entitled to a return of the security deposit pursuant to their lease.

Trial Ct. Op., 3/1/24, at 1-5 (citations and some footnotes omitted, some formatting altered).

The trial court summarized the procedural history as follows:

A jury trial was held before the undersigned which began on August 21, 2023 and concluded on August 23, 2023.[fn2]

> [fn2] Prior to the submission of the case to the jury, the court reviewed the proposed points for charge and proposed verdict slips with counsel. Following a review of same, no objections were lodged by counsel.

* * *

On August 23, 2023 a jury found [Appellee] negligent and Appellant [comparatively[2]] negligent and awarded Appellant $10,000 in damages, which resulted in an award of $6,000. The jury further found that Appellant was not entitled to a return of her security deposit. Following the verdict, the court polled the jury, confirmed that counsel had no objections, and dismissed the jury.

*Id.* at 2, 5 (citations omitted).

Appellant subsequently filed a timely post-trial motion. Therein, she argued that, among other matters, that the trial court had provided incorrect jury instructions, and that the verdict was against the weight of the evidence because it did not bear reasonable relation to Appellant's loss. Also, Appellant

---

[2] Here, the trial court stated that the jury found Appellant "contributorily negligent[.]" Trial Ct. Op. at 5. However, the record reflects that the trial court properly instructed the jury concerning comparative negligence. *See* N.T. Trial, 8/23/23, at 76-77; Verdict Sheet, 8/23/23, at 2 (unpaginated).

presented a claim that the jury's verdict was the result of passion, prejudice, or partiality based on one of Appellee's social media posts. Appellant attached one of Appellee's social media posts to her post-trial motion, wherein Appellee claimed that after the trial, a juror had approached him, described Appellant as a "b----," and stated that the juror did not want to award her any damages. *See* Appellant's Post-Trial Mot., 9/5/23, Ex. A. The trial court denied Appellant's post-trial motion on November 15, 2023, and judgment was entered that same day.

Appellant filed a timely notice of appeal. Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues on appeal:

1. Is [Appellant] entitled to a new trial when the jury was given an erroneous instruction with respect to the Dog Law?

2. Is [Appellant] entitled to a new trial where the issue of the security deposit was improperly submitted to the jury, and further, with an erroneous instruction?

3. Should the jury verdict be set aside as inadequate when it appears to have been the product of passion, prejudice, partiality, or corruption, or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by [Appellant] when a juror refers to [Appellant] as a "b****"? (profanity omitted)

4. Should the jury verdict be set aside when it is against the weight of the evidence and based on the testimony witnesses [sic] that were not credible?

Appellant's Am. Brief at 3 (some formatting altered).[3]

### Jury Instructions

Appellant's first two issues are related; therefore, we address them together. First, Appellant argues that the trial court provided an erroneous instruction about the Dog Law. *Id.* at 10-16. Specifically, Appellant contends that the current version of the Dog Law does not require Appellant to prove that the dog had bitten someone in the past to prove Appellee knew that the dog was vicious. *Id.* at 11-12.

Next, Appellant argues that the trial court erred by submitting Appellant's claim for the return of her security deposit to the jury, and by providing an erroneous instruction about the Landlord Tenant Act because Appellant was entitled to the return of her security deposit as a matter of law. *Id.* at 17-18.

Lastly, Appellant also argues that her failure to object to the jury instruction should not result in waiver because her counsel "held a good faith belief that such objections could be raised in the post-trial motion." *Id.* at 16 (some formatting altered).

_____

[3] We note that in her Rule 1925(b) statement, Appellant raised approximately seven additional issues. *See* Rule 1925(b) Statement, 1/2/24, at 1-4. Appellant has not raised any of these additional claims in her appellate brief; therefore, Appellant has abandoned these issues on appeal. *See* Pa.R.A.P. 2116(a), 2119(a); *see also Allied Envtl. Serv., Inc. v. Roth*, 222 A.3d 422, 424 n.1 (Pa. Super. 2019) (stating that "[a]n issue identified on appeal but not developed in the appellant's brief is abandoned and, therefore, waived" (citation omitted)).

Before addressing the merits of Appellant's claims, we must determine whether she has preserved them for appeal. This Court may raise the issue of waiver *sua sponte*. **See Tucker v. R.M. Tours**, 939 A.2d 343, 346 (Pa. Super. 2007). "The issue of waiver presents a question of law, and, as such, our standard of review is *de novo* and our scope of review is plenary." **Trigg v. Children's Hosp. of Pittsburgh of UPMC**, 229 A.3d 260, 269 (Pa. 2020) (citation omitted).

Our Supreme Court has explained that in order "to preserve for appellate review an issue concerning the correctness of a trial court's charge to the jury, the complaining party must submit a specific point for charge or make a timely, specific objection to the charge given." **Jones v. Ott**, 191 A.3d 782, 784 (Pa. 2018) (citation and quotation marks omitted); **see also Carlini v. Glenn O. Hawbaker, Inc.**, 219 A.3d 629, 643 (Pa. Super. 2019) (stating that "an appellant must make a timely and specific objection to a jury instruction to preserve for review a claim that the jury charge was legally or factually flawed" (citation omitted)).

Further, it is well-established that a "lawyer must be familiar with well settled principles of law and the rules of practice which are of frequent application in the ordinary business of the profession." **Fiorentino v. Rapoport**, 693 A.2d 208, 213 (Pa. Super. 1997) (citation and quotation marks omitted); **see also Parkway Corp. v. Edelstein**, 861 A.2d 264, 269 (Pa. Super. 2004) (holding that a party's ignorance of a procedural rule was not an excuse for the party's failure to comply with that rule).

- 7 -

Here the trial court explained:

> Appellant maintains that the court erred in instructing the jury in this case. Specifically, Appellant challenges the court's instruction pertaining to Dog Law and with respect to the Landlord Tenant Act. Because Appellant was required to object to the jury charge before the jury was discharged, she cannot now complain of this issue on appeal.

Trial Ct. Op., 3/1/24, at 14 (citations and footnote omitted).

Based on our review of the record, we agree with the trial court that Appellant has waived these issues. Here, the record reflects that after the trial court gave its closing instructions to the jury, the trial court asked counsel at sidebar if there was anything he wanted to add, and Appellant's counsel replied in the negative. *See* N.T. Trial, 8/23/23, at 85. Therefore, Appellant has waived her issues regarding the jury instructions and the issues submitted to the jury. *See Jones*, 191 A.3d at 784; *Carlini*, 219 A.3d at 643.[4] Appellant's counsel's misunderstanding of the procedure to preserve an objection to jury instructions is not a basis to excuse the failure to object. *See*

---

[4] We also note that a directed verdict can be entered where the movant is entitled to judgment as a matter of law. *See Hall v. Episcopal Long Term Care*, 54 A.3d 381, 395 (Pa. Super. 2012); *see also* Pa.R.C.P. 226(b) (providing that "[a]t the close of all the evidence, the trial judge may direct a verdict upon the oral or written motion of any party"). However, the failure to move, either orally or in writing, for a directed verdict waives a party's right to seek judgment notwithstanding the verdict and appellate relief for the relevant claim. *See Phelps v. Caperoon*, 190 A.3d 1230, 1247 (Pa. Super. 2018). Therefore, Appellant's failure to move for a directed verdict on the issue of the security deposit also waived that issue. *See id.*; *Hall*, 54 A.3d at 395.

*Fiorentino*, 693 A.2d at 213; *see also Parkway Corp.*, 861 A.2d at 269.

Therefore, Appellant has waived these claims and is not entitled to relief.[5]

**Inadequacy of the Verdict**

Appellant next argues that the trial court erred by denying her motion for a new trial based on the inadequacy of the verdict. Appellant's Am. Brief at 21-27. Specifically, Appellant contends that the verdict was the product of passion, prejudice, or partiality as demonstrated by Appellee's social media post, which quoted a juror's statement calling Appellant a "b----." *Id.* at 22. Appellant further claims that a new trial is warranted because there was undisputed evidence that she was injured as a result of Appellee's negligence. *Id.* at 26-27 (citing *inter alia*, *Andrews v. Jackson*, 800 A.2d 959 (Pa. Super. 2002)).

The following standard of review applies to our review of the trial court's denial of a motion for a new trial:

> We will reverse a trial court's decision to deny a motion for a new trial only if the trial court abused its discretion. We must review the court's alleged mistake and determine whether the court erred and, if so, whether the error resulted in prejudice necessitating a new trial. If the alleged mistake concerned an error of law, we will scrutinize for legal error. Once we determine whether an error

---

[5] Additionally, Appellant argues that the trial court erred by introducing photographs of the condition of her apartment after she vacated the premises. *See* Appellant's Am. Brief at 19-21. However, Appellant did not include this evidentiary claim in the statement of questions involved in her appellate brief. Therefore, it is waived. *See* Pa.R.A.P. 2116(a) (stating that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby").

occurred, we must then determine whether the trial court abused its discretion in ruling on the request for a new trial.

***Carlini***, 219 A.3d at 643 (citation omitted); ***see also Mader v. Duquesne Light Co.***, 241 A.3d 600, 607 (Pa. 2020) (explaining that "[a]n abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will. Merely because an appellate court would have reached a different result than the trial court does not constitute a finding of an abuse of discretion" (citations omitted)).

Our Supreme Court has stated:

While a jury's verdict and damages award are generally insulated from challenge, the grant of a new trial may be required to achieve justice in those instances where the original trial, because of taint, unfairness, or error, produces something other than a just and fair result, which is the principle goal of judicial proceedings. As we explained in ***Kiser v. Schulte***, 648 A.2d 1, 4 (Pa. 1994), a jury verdict may be set aside as inadequate "when it appears to have been the product of passion, prejudice, partiality, or corruption, or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff. Where the jury's verdict is so contrary to the evidence as to 'shock one's sense of justice' a new trial should be awarded." ***Id.*** (citations omitted). We cautioned that it was within "the province of the jury to assess the worth of the testimony and to accept or reject the estimates given by the witnesses," and if the verdict "bears a reasonable resemblance to the proven damages, it is not the function of the court to substitute its judgement for the jury's." ***Id.*** Yet, where the injustice of the verdict stands forth like a beacon, a court should not hesitate to find it inadequate and order a new trial.

***Mader***, 241 A.3d at 612-13 (some citations omitted and some formatting altered).

- 10 -

In ***Andrews***, this Court has explained:

Where there is no dispute that the defendant is negligent and both parties' medical experts agree the accident caused **some** injury to the plaintiff, the jury may not find the defendant's negligence was not a substantial factor in bringing about at least **some** of plaintiff's injuries. Such a verdict is contrary to the weight of the evidence adduced at trial. In other words, a jury is entitled to reject any and all evidence up until the point at which the verdict is so disproportionate to the uncontested evidence as to defy common sense and logic.

***Andrews***, 800 A.2d at 962 (citations omitted, some formatting altered, and emphases in original).

In ***Andrews***, "the jury returned a verdict finding defendants negligent, but also finding the negligence was not a substantial factor in causing [the plaintiff's] injuries. The jury awarded [the plaintiff] zero damages." ***Id.*** at 961. The trial court granted the plaintiff's post-trial motion for a new trial and the defendants appealed. ***Id.*** This Court affirmed, explaining that

the jury was not permitted to disregard the [uncontroverted] evidence of causation and find [the defendants'] negligence was not a substantial factor in causing at least some injury to [the plaintiff]. Had the jury found the accident caused some injury to [the plaintiff], but declined to award damages because the jury concluded the injury was so minor as to be noncompensable, we would not have disturbed their verdict. However, the jury's verdict that [the plaintiff] was not "injured" in the accident goes against the weight of the competent evidenced adduced by both parties' medical experts at trial.

***Id.*** at 965 (citation omitted).

Rule of Evidence 606(b) states, in relevant part:

(1) *Prohibited Testimony or Other Evidence*. During an inquiry into the validity of a verdict, a juror may not testify about any

- 11 -

statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

(2) *Exceptions*. A juror may testify about whether:

(A) prejudicial information not of record and beyond common knowledge and experience was improperly brought to the jury's attention; or

(B) an outside influence was improperly brought to bear on any juror.

Pa.R.E. 606(b); *see also Pratt v. St. Christopher's Hosp.*, 866 A.2d 313, 319 (Pa. 2005).

Here, the trial court explained:

Appellant also argues that she should have been awarded a new trial on damages and asserts that "the amount of the verdict bears no reasonable relation to the loss suffered by plaintiff." This court has construed Appellant's claim as a challenge to the weight of the evidence and submits that no relief is due.

The decision to grant of deny a new trial, because of the inadequacy of the verdict, is a decision particularly within the discretion of the trial court and will not be overturned on appeal unless the verdict is so unreasonable as to bring conviction that it was influenced by partiality or prejudice or some misconception of the law or evidence in the case. In her concise statement Appellant seems to argue that the jury award resulted from prejudice due "uncontradicted medical evidence", because the jury "may have disregarded jury instructions" and because Appellant located a social media post made by [Appellee] after the trial that gave an inference that the verdict was inadequate and prejudicial because [Appellee] used profane language when referencing Appellant.

It is well established that jury is free to believe all, some, or none of the testimony presented by a witness. . . . If one party has the burden of proof, opposing counsel may strenuously controvert the evidence through cross-examination and argument; reasons not

to accept the plaintiff's evidence may suffice to prevent the meeting of that burden, even without affirmative countervailing evidence.

Despite Appellant's arguments to the contrary, it was clear from the record that the jury in this case settled the issue of liability fairly and upon sufficient evidence. The evidence admitted at trial pertaining to Appellant's losses at trial were not uncontroverted. Evidence was also presented that Appellant had fully recovered from the injury, that she had a favorable outcome, and that she did not require any physical therapy. It was within the [province] of the jury to consider all the evidence in awarding damages. It was not the function of this court to substitute its judgment in place of the jury's. Given the facts presented at trial, the jury's verdict on the amount of damages was not against the weight of the evidence nor did it shock one's conscience.

Trial Ct. Op., 3/1/24, at 13-14 (citations omitted and some formatting altered).

Based on our review of the record, we discern no abuse of discretion or error of law by the trial court. *See Carlini*, 219 A.3d at 643. We note that this case is distinguishable from *Andrews*, because in that case the jury did not award any damages. Instantly, the jury found Appellee 60% negligent and Appellant 40% comparatively negligent and awarded Appellant $10,000 in compensatory damages, which resulted in a molded award of $6,000. The jury further found that Appellant was not entitled to the return of her security deposit. Following the verdict, the trial court polled the jurors, confirmed that counsel had no objections, and dismissed the jury. *See* Trial Ct. Op. at 5. *Cf. Andrews*, 800 A.2d at 965 (holding that the jury erred by disregarding the uncontroverted medical evidence, finding the defendant not liable, and awarding the plaintiff no damages). Additionally, Appellant did not seek

damages for medical bills or lost wages. *See* N.T. Trial, 8/21/23, at 110-11, 132. Therefore, we conclude that the verdict bears reasonable resemblance to Appellant's proven damages, and this is not a situation where injustice of the verdict stands forth like a beacon. *See Mader*, 241 A.3d at 612-13.

Further, the social media post that Appellant attached to her post-trial motion which describes a juror's disparaging remarks about Appellant is not a basis for awarding a new trial because evidence about a juror's mental processes concerning the verdict is not admissible. *See* Pa.R.E. 606(b); *see also Pratt*, 866 A.2d at 319. Therefore, the trial court did not err in refusing to consider this inadmissible evidence. For these reasons, Appellant is not entitled to relief on this claim.[6]

**Weight of the Evidence**

In Appellant's final issue, she argues that the verdict was against the weight of the evidence. Appellant's Am. Brief at 27-28. Specifically, Appellant

---

[6] Additionally, Appellant argues that Appellee's counsel improperly referred to insurance during closing arguments. *See* Appellant's Am. Brief at 25. Appellant admits that she did not object to that remark. *Id.* Therefore, Appellant has waived this claim. *See* Pa.R.A.P. 302(a) (stating that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal"); *see also Thompson v. Thompson*, 963 A.2d 474, 475-76 (Pa. Super. 2008) (stating that "[i]n order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. Failure to timely object to a basic and fundamental error will result in waiver of that issue" (citation omitted)). Further, Appellant waived this issue because she did not include in the statement of questions involved in her appellate brief. *See* Pa.R.A.P. 2116(a) (stating that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby").

claims that "[t]he jury improperly found [Appellee] to be credible despite obvious misstatements that were contradicted by direct evidence, such as his handling of the dog following its attack on [Appellant]." **Id.** at 27. Appellant contends that a witness's false testimony is grounds to award a new trial. **Id.** at 27-28.

This Court has explained that "[a] new and different theory of relief may not be successfully advanced for the first time on appeal." **PCS Chadaga v. Torres**, 252 A.3d 1154, 1158 (Pa. Super. 2021) (citing, *inter alia*, Pa.R.A.P. 302(a)); **see also Cabot Oil and Gas Corp. v. Speer**, 241 A.3d 1191, 1196 (Pa. Super. 2020) (**Cabot Oil**) (stating that "issues raised for first time in Rule 1925(b) statement are waived" (citation and footnote omitted)).

Here, Appellant did not include a weight-of-the-evidence claim based on Appellee's credibility in her post-trial motion. She first raised this claim in her Rule 1925(b) statement. Therefore, this claim is waived. **See Cabot Oil**, 241 A.3d at 1196; **see also PCS Chadaga**, 252 A.3d at 1158.

For these reasons, we conclude that Appellant is not entitled to relief and affirm the judgment entered in her favor.

Judgment affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/31/2024