J-A24021-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| PAIGE TAYLOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JUST ABOUT ME LEARNING | : | No. 532 EDA 2024 |
| ACADEMY, LLC JOHN DOES, (1-10) | : | |

Appeal from the Order Entered February 14, 2024
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  220302533

BEFORE:  LAZARUS, P.J., KING, J., and LANE, J.

MEMORANDUM BY KING, J.:                    **FILED APRIL 10, 2025**

Appellant, Paige Taylor, appeals from the judgment entered in the Philadelphia County Court of Common Pleas, in favor of Appellee, Just About Me Learning Academy, LLC,[1] in this negligence action.  We affirm.

The relevant facts and procedural history of this appeal are as follows. Appellant, an employee of the Commonwealth of Pennsylvania Department of Human Services' ("DHS") Office of Child Development and Early Learning, inspected the premises of Appellee Just About Me Learning Academy.  Appellee

---

[1] Although "John Does 1-10" are listed in the caption, they were never served, never entered an appearance, and no verdict was entered with respect to them.  Thus, John Does 1-10 are not parties to the action.  ***See Hill v. Ofalt***, 85 A.3d 540, 546 n.5 (Pa.Super. 2014) (stating "everyone whose name appears in the caption of a *praecipe* for writ of summons is not necessarily a party to the action; parties to an action are those who are named as such in the record and are properly served with process or enter an appearance") (quoting ***Liles v. Balmer****,* 653 A.2d 1237, 1239 n. 1 (Pa.Super. 1994)).

requested that Appellant wear plastic shoe coverings to decrease the spread of COVID-19. During the inspection, Appellant slipped and fell down a flight of stairs.

On March 24, 2022, Appellant filed a complaint against Appellee for negligence, claiming that Appellee failed to maintain the surface on which she fell; failed to warn her about dangerous conditions; and provided unsafe shoe covers. On June 23, 2023, the matter proceeded to compulsory, non-binding arbitration, which found in favor of Appellee and against Appellant. That same day, Appellant appealed the arbitration finding to the trial court.

On October 2, 2023, **after** the close of discovery, Appellee filed a motion for summary judgment alleging that the condition of the staircase was not a dangerous condition that would subject Appellee to liability; rather, Appellee alleged that Appellant failed to step on the carpet runner partially covering the step. In response, Appellant asserted that her foot had missed the partial carpet strip due to the staircase tread being too narrow and the riser height too high. Appellant submitted an expert report from a professional engineer in support of this claim. The trial court denied Appellee's motion for summary judgment.

Subsequently, Appellee filed a motion *in limine* seeking to exclude Appellant's expert report, claiming that it offered a theory of liability that the complaint did not include because the complaint did not allege that Appellee constructed the stairs, and the complaint did not mention stair depth or height and did not allege any violation of any building code or ordinance. In addition,

Appellant filed a motion *in limine* to exclude Appellee's expert report concerning the shoe covering that Appellant was wearing at the time of the fall. Appellant claimed that Appellee's expert was not provided the exact shoe coverings that Appellant wore, and the expert did not explain how she knew that the shoe coverings that were provided were representative of the coverings Appellee had provided to Appellant.

On January 12, 2024, the court denied Appellant's motion *in limine* to exclude Appellee's expert report. On January 17, 2024, the trial court issued an order ruling on Appellee's motion *in limine*, limiting Appellant to presenting evidence solely about the carpet stripping that Appellee had installed on the stairs. The court excluded evidence related to codes, stair dimensions, and creation of the stairs, explaining that the only party involved in the case is the tenant of the building, not the landlord.

The matter proceeded to jury trial from January 17, 2024, through January 23, 2024. Appellant presented the testimony on cross-examination of Sharon Pannell, Appellee's owner, and Verica Perkins, Appellee's director; the expert testimony of Dr. Randall Smith and Dr. James Barrese, both via videotaped deposition; and the testimony of Paulette Taylor, Appellant's sister. Appellant testified on her own behalf. Appellee presented the expert testimony of Dr. Joseph Bernstein, via videotaped deposition, and Dr. Vasiliki Kefala, also via videotaped deposition. On January 23, 2024, the jury reached a verdict in favor of Appellee and against Appellant.

On January 24, 2024, Appellant timely filed a post-trial motion, which

the court denied on February 14, 2024. That same day, the court entered judgment in favor of Appellee and against Appellant. On February 15, 2024, Appellant timely filed a notice of appeal. On February 21, 2024, the court ordered Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, and Appellant timely complied on February 29, 2024.

On appeal, Appellant presents the following issues for our review:

1. The trial court found that a tenant was not responsible for defects in a property that it leased. The trial court excluded direct evidence and expert opinion testimony about those defects, reasoning that a tenant is not responsible for dangerous conditions that it did not create. As an alternative ground for its decision, the trial court found that [Appellant's] pleading did not allege a claim based on the defect even though the complaint alleged that the accident was caused by a "dangerous condition of the interior walking surface." Were the exclusions of evidence error?

2. [Appellee's] expert opined that shoe covers that [Appellee] provided to [Appellant] were not slippery enough to cause an accident yet did not know what shoe covers were provided and instead used "exemplars" of other shoe coverings. Did the expert lack an adequate basis for her opinion under Pa.R.E. 703?

(Appellant's Brief at 4).

Our standard of review concerning a trial court's ruling on a motion *in limine* is well settled: "Admission of evidence is within the sound discretion of the trial court and a trial court's rulings on the admission of evidence will not be overturned absent an abuse of discretion or misapplication of law." *Carlini v. Glenn O. Hawbaker, Inc.*, 219 A.3d 629, 639 (Pa.Super. 2019) (citation omitted). "To constitute reversible error, a ruling on evidence must be shown

not only to have been erroneous but harmful to the party complaining." *Id.* (citation omitted). Moreover, harmless error is defined as an error that does not affect the verdict. *Yacoub v. Lehigh Valley Medical Associates, P.C.*, 805 A.2d 579, 590 (Pa.Super. 2002), *appeal denied*, 573 Pa. 692, 825 A.2d 639 (2003).

In her first issue, Appellant argues that the court improperly precluded her proposed expert testimony regarding the physical dimensions of the staircase and its noncompliance with the Philadelphia Code. Appellant asserts that her complaint adequately raised physical defects in the surface on which she slipped. Appellant contends that the trial court's assertion that there was a material variance between the complaint and evidence about the condition of the staircase is incorrect. According to Appellant, there was no doubt she had based her claim upon a dangerous condition of the staircase. Appellant insists that she is not required to plead anything about the type of evidence used to support her claim but must plead only the **type** of claim and underlying events. Appellant submits that the trial court improperly excluded evidence that was essential to her theory of liability. Appellant maintains that it was the combination of dangers that Appellee permitted and created that caused the injury, namely, the partially covered staircase, shoe covers, and the dimensions of the staircase. Appellant suggests that the exclusion of her evidence was not harmless and prejudiced her such that a new trial is

required.[2]  We disagree.

Initially, we note that:

> It is well settled that a variance between the pleadings contained in a plaintiff's complaint and the theory the party later attempts to prove at trial may result in preclusion of the new theory if it constitutes a new cause of action and is prejudicial to the defense. ***Reynolds v. Thomas Jefferson University Hospital****,* [676 A.2d 1205, 1210 (Pa.Super. 1996)].  A proposed amendment of the complaint which adds or changes the theory of recovery upon which relief is sought through the introduction of new factual allegations generally constitutes a new cause of action.  ***Id.*** at 1210-11.  "Stated differently, an amendment proposes **a different theory or a different kind of negligence** if the operative facts supporting the claim are changed."  ***Id.*** at 1211.

***Rachlin v. Edmison***, 813 A.2d 862, 871-72 (Pa.Super. 2002) (emphasis added).

Further, challenges to the admission of expert testimony are reviewed, as are other evidentiary challenges, on an abuse of discretion standard. ***Farese v. Robinson***, 222 A.3d 1173, 1185 (Pa.Super. 2019).  Pennsylvania Rule of Civil Procedure 1042.32 governs the admissibility of additional or supplemental expert reports, stating:

_____

[2] Additionally, Appellant contends that that the trial court's "apparent" initial basis for its ruling—*i.e.*, tenants are not responsible for dangerous conditions that already existed before their tenancy—is not correct.  Rather, she claims that a tenant is the party responsible for a property's condition during the lease's term.  However, the trial court's opinion does not address this issue, and it is unclear to what portion of the record this argument refers.  ***See*** Pa.R.A.P. 2119(c) (if reference is made to opinion or order or any other matter appearing in record, argument must include reference to place in record where matter referred to appears).  Thus, we decline to address this argument.

Until a deadline set by the court for the production of expert reports has passed or unless the court has precluded such production, a party may serve additional and supplemental expert reports without leave of court. These reports may introduce new theories of liability or causation or new defenses, and may be prepared by other experts.

Pa.R.C.P. 1042.32. Additionally, Pennsylvania Rule of Civil Procedure 4003.5 governs the discovery of expert testimony, stating:

An expert witness whose identity is not disclosed in compliance with subdivision (a)(1) of this rule shall not be permitted to testify on behalf of the defaulting party at the trial of the action. However, if the failure to disclose the identity of the witness is the result of extenuating circumstances beyond the control of the defaulting party, the court may grant a continuance or other appropriate relief.

Pa.R.C.P. 4003.5.

Pennsylvania Rule of Civil Procedure 4003.5 requires parties to timely submit their expert reports, and confines the expert's testimony to the scope of those reports, to avoid unfair surprise. *See Woodard v. Chatterjee*, 827 A.2d 433, 445 (Pa.Super. 2003) (citing comment to Rule 4003.5(c) for proposition that the rule is intended "to prevent incomplete or 'fudging' of reports which would fail to reveal fully the facts and opinions of the expert or his grounds therefor"); *see also Jones v. Constantino*, [631 A.2d 1289, 1294 (Pa.Super.] 1993) (noting the fair scope rule "disfavors unfair and prejudicial surprise"). In such situations, trial courts may exclude the offending testimony entirely or, in some cases permit the opposing party to depose the witness during trial.

*Gregury v. Greguras*, 196 A.3d 619, 630-31 (Pa.Super. 2018) (*en banc*), *appeal denied*, 651 Pa. 504, 205 A.3d 1230 (2019). Additionally, Rule 4003.5(b) "give[s] the trial court discretion to preclude expert trial testimony **at any pre-trial date**[.]" *Kurian ex rel. Kurian v. Anisman*, 851 A.2d 152,

161 (Pa.Super. 2004) (emphasis in original).

Instantly, the trial court explained:

> Firstly, it should be noted that the trial court, when granting Appellee's motion *in limine*, only precluded evidence as to codes, stair dimensions, and the actual creation of the stairs. In the instant matter, the trial court properly precluded Appellant's expert witness, Jason Boyd, P.E., from testifying at trial because his testimony would have been supporting and advancing a new theory of negligence that was not contained in the complaint and such would have been prejudicial to Appellee. Appellant's complaint states the following,
>
> > On or about October 14, 2020, [Appellant] was an invitee on the premises known as Just About Me Learning Academy, at 4802 N. Broad St., Philadelphia, Pennsylvania when she was given mandatory shoe covers to wear and was suddenly and unexpectedly caused to fall due to said shoe covers and a dangerous condition of the interior walking surface, thereby causing [Appellant] to sustain serious and permanent injuries which will hereinafter be more fully described.
> >
> > The aforementioned incident was caused solely by the negligence of [Appellee] in failing to properly maintain the walkway in question, which negligence consisted of one of the following: a) failing to provide adequate and safe shoe covers for the particular walking surface on the premises; b) failing to properly inspect, discover, and remedy the defective conditions which existed on, of, and about the walkway, which [Appellee] knew or reasonably should have known existed prior to the time of [Appellant's] accident; c) failing to warn members of the general public of the dangerous conditions which existed; d) allowing a dangerous and hazardous condition of the subject walkway to exist for an unreasonable amount of time; and/or e) creating the dangerous and hazardous walking condition of the subject walkway with said shoe covers.

- 8 -

One of Appellant's intended ways to prove the staircase was dangerous was Mr. Boyd's expert testimony as to the unsafe staircase dimensions. Mr. Boyd would have testified at trial as an expert as to the staircase in relation to Philadelphia Fire Code 1101.5, which deals with stair riser height and stair tread depths, Philadelphia Property Maintenance Code 102.3, which states repairs, additions, or alterations to a structure shall be done in accordance with [various international building codes] as well as Philadelphia Property Maintenance Code 108.1.15, which details what is considered a dangerous structure due to the presence of certain conditions, Philadelphia Property Maintenance Code 305.4, which states that stairs and walking surfaces shall be maintained in sound condition and good repair, and ASTM F1637 5.2.4, which details a standard practice for safe walking surfaces. Mr. Boyd also conducted a site inspection of the staircase on September 28, 2023. Mr. Boyd's expert report detailing such was issued on October 5, 2023, which was almost a year after the statute of limitations ran on Appellant's negligence claim and after the applicable case management deadline.

Appellant's complaint does not allege any facts regarding the staircase dimensions nor facts regarding Appellee violating any codes. Mr. Boyd's expert testimony, if it were permitted, would have proposed a different theory/kind of negligence than the one previously raised in Appellant's complaint. Thus, Mr. Boyd's expert testimony would have been advancing a new cause of action inconsistent with the complaint's facts. This introduction of a new cause of action, if it were permitted, would have greatly prejudiced Appellee because Appellee was never put on notice regarding the staircase dimensions and code/ordinance violations via the complaint nor during discovery. The staircase dimensions evidence does not correspond with the material facts pled in the complaint, and throughout discovery, Appellee was not provided a response to its interrogatories regarding any code violations and Appellant responded to Appellee's discovery request concerning the cause of the accident, to which Appellant stated it was related to the shoe coverings, not anything related to the staircase dimensions. Furthermore, Mr. Boyd's expert testimony, which was based on his report that was issued after the applicable deadlines and well after the statute of limitations ran on Appellant's

claim, advances a new cause of action that would have most certainly prejudiced Appellee at trial. The discrepancy in Mr. Boyd's proposed expert testimony and what was alleged in Appellant's complaint results in an inconsistency between the two, which allows preclusion of said evidence.

(Trial Court Opinion, 3/1/24, at 5-8) (some internal citations omitted).

We agree that the trial court's analysis. The record confirms that Appellant produced Mr. Boyd's expert report on October 5, 2023, **one month after** the applicable discovery deadline of September 5, 2023. The docket entries indicate that Appellant never requested a continuance of the discovery deadline or offered an explanation regarding the lateness of the report. *See* Pa.R.C.P. 1042.32 (stating that until deadline set by court for production has passed, party may serve additional expert reports). As the proffered expert report advanced a new basis for relief not stated in the complaint, the trial court properly excluded it to prevent unfair surprise to Appellee. *See Gregury, supra*. *See also* Pa.R.C.P. 1042.32; Pa.R.C.P. 4003.5. Therefore, Appellant is not entitled to relief on this issue.[3]

In Appellant's second issue, she argues that the trial court erred in denying her motion in *in limine* seeking to exclude the expert testimony of Dr. Vasiliki Kefala. According to Appellant, Dr. Kefala lacked an adequate basis for her opinion in violation of Pa.R.E. 703. Specifically, Appellant contends that Dr. Kefala opined that the shoe covers that Appellee provided were not slippery enough to cause an accident. Appellant emphasizes that Dr. Kefala

_____

[3] Appellant's brief does not provide further explanation as to why she failed to meet the discovery deadline of September 5, 2023.

- 10 -

did not know what specific shoe covers were provided and instead used "exemplars" of other shoe coverings. Appellant concludes the trial court should have granted her motion *in limine* to exclude this testimony, and this Court must grant her a new trial. We disagree.

The Pennsylvania Rules of Evidence provide:

### Rule 703. Bases of opinion testimony by experts

An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

Pa.R.E. 703. The Comment to the Rule further provides that:

When an expert testifies about the underlying facts and data that support the expert's opinion and the evidence would be otherwise inadmissible, the trial judge upon request must, or on the judge's own initiative may, instruct the jury to consider the facts and data only to explain the basis for the expert's opinion, and not as substantive evidence.

Pa.R.E. 703, *Comment*.

Essentially,

[w]hile an expert's opinion need not be based on absolute certainty, an opinion based on mere possibilities is not competent evidence. This means that expert testimony cannot be based solely upon conjecture or surmise. Rather, an expert's assumptions must be based upon such facts as the jury would be warranted in finding from the evidence. Accordingly, the Pennsylvania Rules of Evidence prescribe a threshold for admission of expert testimony dependent upon the extent to which the expert's opinion is based on facts and data.

***Gillingham v. Consol Energy, Inc.***, 51 A.3d 841, 849 (Pa.Super. 2012)

(citation omitted). Thus, an adequate basis in fact must enable the expert to opine with a reasonable degree of certainty and is incompetent if it lacks an adequate basis. *See id*.

In certain situations, it is not an abuse of discretion to allow expert reports or testimony based on "exemplar" testing. *See, e.g., Bourgeois v. Snow Time, Inc.*, 663 Pa. 376, 388-90, 242 A.3d 637, 644-45 (2020) (permitting expert report based on testing of five exemplar kitchen mats for coefficient of friction testing). *See also Sullivan v. Werner Company*, 253 A.3d 730, 753-54 (Pa.Super. 2021) (explaining that probative value of video showing testing of exemplar scaffold outweighed potential prejudice, where manufacturer could attack exemplar through cross-examination). *Compare Nobles v. Staples, Inc.*, 150 A.3d 110, 116-117 (Pa.Super. 2016) (affirming exclusion of expert report where expert did not inspect chair at issue and did not apply any scientific expertise to conclude chair was defective, including examining exemplar or any similar chair).

Instantly, the trial court observed:

> Dr. Kefala's expert testimony described how the walking surfaces where Appellant's accident occurred on possessed sufficient friction for humans to walk on with shoe coverings. Dr. Kefala's testimony was based on, a review of the complaint, Appellant's testimony, Appellant's medical records, photographs of the area where Appellant fell, and an inspection of Appellee's premises, which included friction coefficient testing. Based on her experience in the fields of physics and biomechanical engineering, and market research, to perform the testing, Dr. Kefala selected five exemplar shoe coverings representative of the actual shoe coverings worn by Appellant on the date of her accident

- 12 -

since the actual shoe coverings were never preserved. Dr. Kefala's expert testimony did not lack an adequate basis in fact as Dr. Kefala's expert opinion was based on facts made aware to her by way of the documents and testimony she reviewed along with facts stemming from the inspection and testing, which Dr. Kefala personally observed. Appellee's counsel, in her response to Appellant's motion *in limine,* cited to a Pennsylvania Supreme Court case, **Bourgeois v. Snow Time, Inc.**[*, supra*], in which the expert witness in that case used five exemplar kitchen mats during friction coefficient testing to make expert opinions regarding the actual kitchen mats used. The methodology in **Bourgeois** is similar if not identical to the instant matter. The fact that Dr. Kefala did not use the actual shoe coverings worn by Appellant on the day of the accident does not make Dr. Kefala's expert opinion a product of speculation and/or conjecture. All of Dr. Kefala's opinions were to a reasonable degree of scientific certainty. With Dr. Kefala's expert opinion being based on facts/data she either reviewed herself or conducted herself it is not speculative, and her expert testimony was properly permitted at trial.

(Trial Court Opinion at 12-13) (citations to the record omitted).

The record supports the trial court's conclusion. Dr. Kefala's expert report notes that she used five separate exemplar shoe covers, of a similar style but "different brand and different kind," to conduct coefficient of friction testing and "ascertain their propensity to move on different types of surfaces" at the subject location. (**See** N.T. Trial, 1/23/24, at 3, Def. Ex. 42). In her deposition, which was played for the jury, Dr. Kefala testified that the shoe covers were a "representative variety" of the shoe covers that "exist on the market right now," and that she had tested a variety of covers due to the fact that there was no information available regarding the exact shoe cover Appellant wore at the time she fell. (**See** N.T. Trial, 1/23/24, at 3, Def. Ex. 41, N.T. Deposition, 2/21/23, at 39-41). Dr. Kefala did not notice any "big

differences" between the brands tested. (*See id.* at 41). Dr. Kefala described at length her scientific testing process, which included multiple trials for each brand of shoe cover at different locations on the premises, and she took the average of each test to be more consistent. (*See id.* at 43-44). Thus, we agree with the trial court that Dr. Kefala had an adequate basis for her report, and we see no abuse of discretion by the trial court in permitting this testimony, particularly where Appellant's counsel was permitted to cross-examine Dr. Kefala during her deposition. *See Carlini, supra*; *Gillingham, supra*. *See also Bourgeois, supra*; *Sullivan, supra*. Accordingly, Appellant is not entitled to relief on this claim, and we affirm.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/10/2025