J-A10001-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

IN THE INTEREST OF: S.L.M.R.'S., A   :   IN THE SUPERIOR COURT OF
MINOR                      :       PENNSYLVANIA
                                        :

APPEAL OF: K.C.                     :

                                        :     No. 3156 EDA 2024

Appeal from the Decree Entered November 8, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000164-2024

BEFORE:    PANELLA, P.J.E., BECK, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.E.:           **FILED JUNE 2, 2025**

      K.C. ("Appellant"), appeals from the November 8, 2024, decree granting the petition of the Philadelphia Department of Human Services ("DHS" or "the Agency") and involuntarily terminating his parental rights to his daughter, S.L.M.R.'S. ("Child") (born in February 2020).[1, 2] After review, we affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] By decree dated and entered on August 26, 2024, the trial court voluntarily terminated the parental rights of Child's mother, S.F.M.L. ("Mother"). Mother did not appeal that decree or participate in the instant appeal.

[2] By separate decree dated and entered on November 8, 2024, the court involuntarily terminated the parental rights of S.J.R.S., who executed an acknowledgement of paternity and was named as Child's father on her birth certificate. Further, at the conclusion of the evidence, the trial court involuntarily terminated the parental rights of any unknown putative father. **See** N.T., 11/8/24, at 21. However, we note that the certified docket does
*(Footnote Continued Next Page)*

In its Rule 1925(a) opinion, the trial court set forth the facts and procedural history, in relevant part, as follows:

> [At the time of Child's birth,] Mother was 17 years old and was committed to [DHS] and receiving services through the Community Umbrella Agency (CUA). [She resided in foster care, where she was joined by Child.] In December 2021, Mother's foster parent submitted her 90-day notice requesting that Mother be removed from her home due to her incorrigible behaviors. Mother refused to be placed in a new foster home, and there were concerns that Mother planned to elope from the foster home with Child when she turned 18 years old.
>
> DHS filed a dependency petition on behalf of Child on December 13, 2021, and an adjudicatory hearing was scheduled for January 6, 2022. At the January 6, 2022, hearing Appellant was identified [by Mother] as Child's father and [counsel was appointed for him].[3] . . .

Trial Court Opinion, 12/19/24, at 1-2 (cleaned up). Therefore, the trial court continued the adjudicatory hearing to January 28, 2022, at which Appellant did not appear, but was represented by court-appointed counsel. The court adjudicated Child dependent following a hearing. *See id.* at 2. Subsequently, Child remained with Mother in the foster home under DHS supervision until March 8, 2022, when the court committed Child to DHS custody. *See id.*

_____

not include a decree involuntarily terminating the parental rights of any unknown putative father to Child. Neither S.J.R.S. nor any unknown putative father filed a separate appeal or participated in the instant appeal.

[3] We observe that this same court-appointed counsel continued to represent Appellant throughout the dependency proceedings, the termination proceedings, and the instant appeal.

The court provided for supervised visitation and established an initial permanency goal of reunification with parents.[4]  In furtherance of reunification, DHS and/or its partner, CUA, instituted a single case plan requiring Appellant to "avail himself to CUA."  N.T., 11/8/24, at 12.  However, despite multiple attempts, DHS and/or CUA were never able to successfully establish contact with Appellant.  *See id.* at 10-11.  Appellant was represented by court-appointed counsel during the underlying dependency proceedings, although he never directly attended, testified, or participated in the proceedings.  *See* Exhibit F-1.  We also note that Appellant makes no argument contesting proper notice.

On April 25, 2024, DHS filed a petition for the involuntary termination of Appellant's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).  Thereafter, on August 3, 2024, counsel filed a motion to dismiss on behalf of Appellant whereby he averred, *inter alia*, that Appellant's whereabouts were unknown; Appellant had no contact or involvement with Child; and another man was named as Child's father on her birth certificate.  *See* Motion to Dismiss, 8/3/24, at §§ 3, 4, 6. The trial court denied the motion to dismiss on August 6, 2024.  *See* Order Denying Petition/Motion, 8/6/24.

---

[4] On November 18, 2022, the court added a concurrent goal of adoption.  *See* Exhibit F-1.

The trial court ultimately held an evidentiary hearing on DHS's petition on November 8, 2024. Appellant did not appear but was represented by counsel, who did not object to service. *See* N.T., 11/8/24, at 4-5. Child, then four years old, was represented by her guardian *ad litem* from the underlying dependency proceedings, Jeffrey C. Bruch, Esquire.[5] DHS presented the testimony of CUA case manager, Anna Cawley.

By decree dated and entered on November 8, 2024, the trial court involuntarily terminated Appellant's parental rights to Child. On December 1, 2024, Appellant filed a timely notice of appeal, through his counsel, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P.

---

[5] Our review of the certified record in this case reveals that the trial court did not issue an order appointing counsel to represent Child's legal interests in the involuntary termination matter. *See In re Adoption of K.M.G.*, 240 A.3d 1218, 1235-36 (Pa. 2020) ("[A]ppellate courts should engage in *sua sponte* review to determine if [trial] courts have appointed counsel to represent the legal interests of children in contested termination proceedings, in compliance with" 23 Pa.C.S.A. § 2313(a). Further, if the trial court appoints one attorney to represent both the child's best interests and legal interests, "appellate courts should review *sua sponte* whether the [trial] court made a determination that those interests did not conflict" prior to appointment.). However, as indicated, despite the absence of a formal order, Child was represented at the relevant proceeding by her GAL. Additionally, the trial court ultimately determined that Child's dual interests do not conflict. *See* N.T., 11/8/24, at 20. While we remind the trial court that a conflict finding should be made prior to a formal appointment of counsel, we decline to elevate form over substance. *See In re T.S.*, 192 A.3d 1080, 1090 n.19 (Pa. 2018) (recognizing that it would "be a better practice for the court to place an order on the record formalizing the GAL's role for termination purposes" but declining "to elevate form over substance" in circumstances when it was clear that the child received appropriate legal representation despite the absence of an appointment order.).

1925(a)(2)(i) and (b). The trial court filed a responsive Rule 1925(a) opinion on December 19, 2024.

On appeal, Appellant raises the following issues for our review:

1. Whether the trial court erred in granting [a] decree of involuntary termination of parental rights (as to Appellant) under 23 Pa.C.S.A. Sections 2511(a)(1),(a)(2), (a)(5), (a)(8), and also under Section 2511(b), in that the evidence as not having been sufficient in establishing Appellant as putative father.

2. Thus, Appellant would aver whether [his] due process rights having been violated under the 5th Amendment of the United States Constitution; as well as under Article 1, Section 1, of the Pennsylvania Constitution (as to the decree of involuntary termination, with respect to the evidence failing to establish in any way Appellant as the father).

3. Additionally, it is averred whether the trial court erred in allowing case manager Anna Cawley to provide testimony pursuant to the case record (as having been inadmissible hearsay).

4. Moreover, along those same lines, it would be averred whether the trial court [] erred in allowing the testimony given by Ms. Cawley pursuant to the aforementioned case record (having been based on a business record exception) as improper, by way of the physical record itself not having been marked and introduced into evidence.

5. Finally, whether there would have been specific error in allowing testimony by Ms. Cawley (although it may be questioned as far as relevance goes) as to Appellant's mother having been informed of Appellant being father.

Appellant's Brief at 5 (cleaned up).[6]

---

[6] Child's GAL expressed his agreement with the termination of Appellant's parental rights at the close of the subject hearing. *See* N.T., 11/8/24, at 19. We however note with displeasure his lack of participation in the instant appeal.

Our standard of review in this context is well-established:

In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.

An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.

In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Interest of M.E.*, 283 A.3d 820, 829-30 (Pa. Super. 2022) (internal citations and quotation marks omitted).

The involuntary termination of parental rights is governed by Section 2511 of the Adoption Act, which calls for a bifurcated analysis that first focuses upon the "eleven enumerated grounds" of parental conduct that may warrant

termination. *Id.* at 830; *see also* 23 Pa.C.S.A. § 2511(a)(1)-(11). If the orphans' court determines the petitioner has established grounds for termination under one of these subsections by "clear and convincing evidence," the court then assesses the petition pursuant to Section 2511(b), which focuses upon the child's developmental, physical, and emotional needs and welfare. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013); *see also* 23 Pa.C.S.A. § 2511(b). This Court need only agree with the trial court's determination as to any one subsection of Section 2511(a), in addition to Section 2511(b), in order to affirm a termination decree. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

Appellant addresses his first and second issues on appeal together. The crux of his claim is that DHS failed to prove that he is Child's "putative father," which is defined by Pa.O.C. Rule 15.2 as "an alleged birth father whose parental status has not been legally established and who is not a presumptive father."[7] Pa.O.C. Rule 15.2[8]; Appellant's Brief at 10 ("Again, although

---

[7] "Presumptive Father" is defined as "the man married to the child's mother at any time during the one-year period prior to the child's birth." Pa.O.C. Rule 15.2. The certified record contains no evidence that Mother was married to either S.J.R.S. or Appellant during this time period.

[8] We recognize that "[i]n Philadelphia County, jurisdiction over adoptions, terminations of parental rights, birth records, and related proceedings is exercised through the Family Court Division of the Philadelphia Court of Common Pleas." Pa.O.C. Rule 15.2 Explanatory Comment (citing to 20 Pa.C.S.A. § 713).

conceded for one to be named as a father attaches a certain role, it is averred in this matter the record not establishing the required proof [] of Appellant being a putative father[].").  As such, Appellant asserts that his guarantee of due process under the United States Constitution and the Pennsylvania Constitution was violated.  *See id.* at 9.

"Due process requires nothing more than adequate notice, an opportunity to be heard, and the chance to defend oneself in an impartial tribunal having jurisdiction over the matter."  *In re J.N.F.*, 887 A.2d 775, 781 (Pa. Super. 2005).  "Due process is flexible and calls for such procedural protections as the situation demands."  *In re Adoption of Dale A., II*, 683 A.2d 297, 300 (Pa. Super. 1996) (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)).

In determining that Appellant's assertions are without merit, the trial court found that Appellant had been represented by counsel for over two years at the time of the subject hearing, during which time paternity testing had not been requested or conducted, and therefore his due process rights were not violated.  *See* Trial Court Opinion, 12/19/24, at 12-13.  The court reasoned:

> Appellant was appointed counsel following the January 6, 2022 hearing and was represented at each subsequent hearing. At each hearing, Appellant had the opportunity to appear, participate, testify, as well as to present evidence and witnesses on his own behalf.  Appellant never appeared in court.
>
> [Further,] Appellant's counsel was present throughout the [termination of parental rights] hearing and had the opportunity to cross-examine witnesses and present evidence on his client's behalf. . . .

- 8 -

Appellant's counsel asserts that Appellant was denied due process because the record failed to establish Appellant as a putative father for Child. The record reflects that Appellant was identified as Child's father before the Child was adjudicated dependent on January 28, 2022. As a result, he was appointed counsel who has represented him since the January 6, 2022 hearing. No dependency order in this case reflects that a paternity test was ordered to confirm Appellant's paternity or exclude him as Child's father. . . .

. . . The record reflects that Appellant was properly served with the goal change and involuntary termination of parental rights petitions and had sufficient notice of the November 8, 2024, hearing. (*See* DHS-1). However, Appellant did not appear in court to contest the termination or submit proof that he was not Child's father. The record also does not reflect that a paternity test was ordered to confirm the identity of Child's father.

This court found that grounds for involuntary termination of Appellant's parental rights existed pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), (5) and (8) and § 2511(b). Adoption is the most appropriate permanency goal and would be in Child's best interest. Before adoption proceedings can commence, the parental rights of any putative father must first be terminated. For these reasons, Appellant's assertion that this court violated his right to due process of law by involuntarily terminating his parental rights is meritless.

*Id.* at 12-13 (cleaned up; paragraph breaks added). We wholly agree.

The essence of Appellant's argument on appeal is that, once he was identified by Mother as the "putative father," the burden was on the Agency to prove that he is Child's biological father. Appellant fails to cite any legal authority in support of his claim. In this case, the record establishes Appellant's status as a putative father because Ms. Cawley testified that Mother identified him as a potential father on January 6, 2022; his parental status was never legally established; and he is not Child's presumptive father

- 9 -

because he was not married to Mother. **See** N.T., 11/8/24, at 7, 10; **see also** Exhibit F-1.

Throughout the dependency proceedings, Appellant failed to engage with CUA, and his whereabouts remained unknown. **See id.** at 10-12. Ms. Cawley testified that CUA attempted to locate and contact Appellant, including using parent locator services. **See id.** at 11. Subsequent to initial efforts, which she described as "difficult," CUA allegedly made contact with Appellant's mother and was "asked to stop contacting the home." **Id.** Ms. Cawley further reported that CUA continued to contact her home in an attempt to reach Appellant, but the calls yielded no response. **See id.**

Notwithstanding, Appellant was represented by counsel throughout the underlying dependency proceedings and the subject termination proceedings, a period of over two years. Counsel had the opportunity to fully participate on Appellant's behalf and at no time objected to Appellant receiving proper notice of any of the proceedings. **See id.** at 5; **see also** Exhibit DHS-1; **see also** Exhibit F-1. We therefore conclude that Appellant's due process rights under the United States Constitution and the Pennsylvania Constitution were not violated.

Despite this consistent representation, Appellant continually failed to appear and contest his parentage at each and every hearing up to and including the subject termination hearing. **See** Exhibit F-1. Therefore, he had not been excluded as a potential father and remained a putative father. **See**

Pa.O.C. Rule 15.2. Therefore, we agree with the trial court that Appellant's claim must fail. *See* Trial Court Opinion, 12/19/24, at 9 ("Because Appellant was named as [] Child's father at the outset of the case and no paternity test excluded him as her father, he remains a putative father to this child. The parental rights of any putative father must be terminated to free this child for adoption.").[9]

With respect to Section 2511(a), Appellant has abandoned any claim in the argument section of his brief. Likewise, he fails to present any meaningful argument concerning Section 2511(b). *See* Appellant's Brief at 10-11 (argument by Appellant that Section 2511(b) does "not give rise to independent grounds for termination" of parental rights). Accordingly, we conclude that Appellant has failed to preserve and waived any challenge related to Section 2511(a)(1), (2), (5), (8), and (b) for failure to develop any meaningful argument related thereto in his brief, and we would therefore affirm under any of these subsections. *See In re M.Z.T.M.W.*, 163 A.3d 462, 465-66 (Pa. Super. 2017) (restating that "this Court will not review an appellant's claim unless it is developed in the argument section of an appellant's brief, and supported by citation to relevant authority.") (citations omitted).

---

[9] As Appellant remained a putative father, his consent or termination of his parental rights would be required in order to proceed with an adoption of Child. *See* 23 Pa.C.S.A. § 2711 (Consents necessary to adoption); 23 Pa.C.S.A. § 2714 (When consent of parent not required).

Next, we turn to Appellant's third, fourth, and fifth issues, which collectively challenge the admissibility of two portions of Ms. Cawley's testimony at the termination hearing. We will address these issues together as Appellant has done in his brief. *See* Appellant's Brief at 11-12. The relevant averments from Ms. Cawley are as follows:

Q. . . .And did you have an opportunity to speak with the biological mother in this case?

A. Yes.

Q. And did she indicate that she had any contact [with S.J.R.S.].

A. No, she said she hadn't spoken to any father in a while.

. . .

COUNSEL FOR [APPELLANT]: Your Honor, if I may. It might be a little late, but I would like to object to that. Other -- the remark as hearsay as a conversation with [M]other as to any father. The only father identified is [S.J.R.S.]. And I would just object and move to strike the response that [M]other had not spoken with any father. Only one father is on the birth certificate.

THE COURT: Overruled. It is my understanding in this case there is one father who is listed on the birth certificate, and we have a putative father. So the two fathers in this case listed . . . will be addressed in this [hearing].

N.T., 11/8/24, at 8-9.

Q. [U]pon your review of the file, has there ever been any established contact with [Appellant]?

COUNSEL FOR [APPELLANT]: Objection. Again, that's hearsay if they're looking at the business record. The business record has never – at the very first hurdle, if -- if -- if the Court is to accept a business record, the very first hurdle is that parties be given the record, if there's any testimony as to the business record. That has not been provided and so I would object that

- 12 -

would -- any -- any information arising out of that record, that's hearsay.

THE COURT: Overruled.

You may respond, Ms. Cawley.

MS. CAWLEY: Could you repeat the question?

. . .

Q. Was there -- has anyone established contact with [Appellant] upon your review of the file?

A. Someone established contact with [Appellant's] mother, but not him directly.

*Id.* at 10-11.

Appellant relies upon *In re A.J.R.-H*., 188 A.3d 1157, 1167 (Pa. 2018), in assailing Ms. Cawley's testimony that "Mother hadn't spoken with any father in a while" and that "someone established contact with [Appellant's] mother" constituted inadmissible hearsay. Appellant's Brief at 11-12 (citing N.T., 11/8/24, at 8, 11). Moreover, Appellant asserts that the aforesaid testimony concerning the Agency's contact with Appellant's mother was not admissible under the business records exception to the hearsay rule. *See id.* at 12. Appellant argues that DHS failed to provide a foundation as to method and time of preparation of the Agency's file and, importantly, that the Agency file relied upon by Ms. Cawley was never presented or entered into evidence. *See id.* Moreover, he contends that such testimony is "double hearsay," with no distinction as to "who had said what to whom?" *Id.*

As Appellant confines his argument to these two specific statements by Ms. Cawley, we conclude that he has abandoned and, therefore, waived any similar challenge to any additional testimony from the hearing. *See M.Z.T.M.W.*, 163 A.3d at 465-66. Furthermore, we note that Appellant failed to preserve his claim concerning Ms. Cawley's testimony that "Mother hadn't spoken to any father in a while" in his Rule 1925(b) concise statement and the statement of questions involved in his brief, we therefore further conclude that any claim thereto is not preserved and likewise waived. *See* Pa.R.A.P. 1925(b)(4)(vii); 2116(a). We proceed to review the admissibility of Ms. Cawley's statement regarding the Agency's contact with Appellant's mother, the only contention that he has not waived.

The Pennsylvania Rules of Evidence ("the Rules") establish that "relevant evidence" is generally admissible, so long as it concerns the underlying controversy and has probative value. *See* Pa.R.E. 401-402. The Rules, however, concomitantly prohibit the admission of hearsay, unless the evidence offered is subject to at least one of a limited number of exceptions. *See* Pa.R.E. 802-803; *see also A.J.R.-H*., 188 A.3d at 1167. "Hearsay" is defined as a statement that "the declarant does not make while testifying at the current trial or hearing," and which "a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c)(1)-(2).

Rule 803(6) provides for the hearsay exception regarding "Records of a Regularly Conducted Activity," which states the following:

The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:

. . .

(6) **Records of a Regularly Conducted Activity.** A record (which includes a memorandum, report, or data compilation in any form) of an act, event or condition if:

（A) the record was made at or near the time by-- or from information transmitted by--someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a "business", which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Pa.R.E. 803(6); *see also* 42 Pa.C.S.A. § 6108(b) ("A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission."). "Where a hearsay document contains additional hearsay within it (often referred to as "double hearsay"), each level of hearsay

- 15 -

must satisfy an exception to the rule prohibiting the admission of hearsay evidence." *A.J.R.-H.*, 188 A.3d at 1169 (citations omitted).

In *A.J.R.-H.*, in an involuntary termination of parental rights proceeding, the subject child welfare agency introduced, and the court admitted over objection, 167 exhibits from various sources contained within the agency file, without any testimony. *See id.* at 1160-62. In concluding that these exhibits were improperly admitted, our Supreme Court reasoned as follows:

> Without question, the manner in which these exhibits were admitted into evidence in the first instance failed to satisfy the requirements of the business records exception. CYS did not present any witness in support of the exhibits' admission, let alone "the custodian or other qualified witness." [*See*] 42 Pa.C.S.[A.] § 6108(b); Pa.R.E. 803(6)(D). Instead, all of the exhibits were presented to the court for admission, in bulk, by the county solicitor prior to calling any witnesses to testify. . . . There was also no testimony of record that someone with knowledge created any of the 167 exhibits at or near the time of the event or that they were created in the regular practice of the various agencies from which the documents came. [See] 42 Pa.C.S.[A.] § 6108(b); Pa.R.E. 803(6)(A), (C). Additionally, none of the documents were certified copies. [*See*] Pa.R.E. 803(6)(D), 902(11). The only information provided at the time of the exhibits' admission was the county solicitor's assurance, in response to the leading question posed by the orphans' court, that the exhibits were contained in CYS's files and "were collected in the ordinary course of business with regard to this case." [*See*] 42 Pa.C.S.[A.] § 6108(b); Pa.R.E. 803(6)(B).

*Id.* at 1167–68 (footnote omitted). The Court continued, "[The agency] failed to present any testimony to establish that any of the 167 exhibits, or the numerous separate documents contained therein, satisfied any of the prerequisites for admission under Rule 803(6). We therefore conclude that

the orphans' court abused its discretion by admitting the exhibits into evidence." *Id.* at 1170.

Instantly, the trial court found that "DHS properly laid the foundation for Ms. Cawley's testimony pursuant to the business records exception to the hearsay rule, which pertains to records of regularly conducted activity." Trial Court Opinion, 12/19/24, at 15 (citing Pa.R.E. 803(6)). The court emphasized that "Ms. Cawley is the current CUA case manager on this case and is the person who maintains the CUA case file. She testified that she reviewed the case file prior to the November 8, 2024, hearing." *Id.* We disagree.

As a threshold matter, we are inclined to credit Appellant's argument that it is not clear whether the Agency actually sought to introduce a "record" into evidence that would even qualify for the hearsay exception at Rule 803(6). *See* Pa.R.E. 803(6) (indicating that this exception applies only to "[a] record" of "an act, event or condition"). Here, the Agency did not seek to introduce the underlying records as evidence, but merely sought to have Ms. Cawley parrot the information that was allegedly present in those records without producing them. In the absence of a document recording an act, event, or condition whose admission is being sought, it is unclear to this Court that Rule 803(6) would even apply. *See id*. Assuming, *arguendo*, that Ms. Cawley's remembrance could have been subject to the business records exception, the Agency failed to lay a proper foundation.

Instantly, Ms. Cawley testified that she had been the CUA case manager since July 2024, a mere four months prior, and that she had reviewed the Agency file. *See* N.T., 11/8/24, at 6. However, DHS failed to elicit any further foundational testimony that "satisfied any of the prerequisites for admission under Rule 803(6)." *A.J.R.-H.*, 188 A.3d at 1170. For example, DHS failed to adduce any testimony related to time, method, or mode of preparation of the Agency file. Hence, we find that Ms. Cawley's testimony regarding contact with Appellant's mother was hearsay and improperly admitted. *See id.*; *see also* Pa.R.E. 803(6); 42 Pa.C.S.A. § 6108(b).

Having found that the testimony regarding contact with Appellant's mother was improperly admitted, we must then make an inquiry as to whether such an error was prejudicial or harmless. "To constitute reversible error, a ruling on evidence must be shown not only to have been erroneous but harmful to the party complaining." *Carlini v. Glenn O. Hawbaker, Inc.*, 219 A.3d 629, 639 (Pa. Super. 2019). By contrast, harmless error is defined as an error that does not affect the verdict. *See Yacoub v. Lehigh Valley Medical Associates, P.C.*, 805 A.2d 579, 590 (Pa. Super. 2002). "[W]hen reviewing for harmless error, the appellate court considers only the uncontradicted evidence and, having done so, proceeds to determine whether that body of uncontradicted evidence was so overwhelming that the erroneous admission of the evidence could not have impacted the verdict." *Commonwealth v. Fitzpatrick*, 255 A.3d 452, 470 (Pa. 2021). As our High Court has explained:

> [W]here, in light of the record as a whole, an erroneous evidentiary ruling could potentially have affected the decision to terminate a parent's rights to his or her child, an error is not harmless and the parent is entitled to a new hearing and decision. We arrived at this standard "[b]ecause of the serious impact attending the termination of parental rights," finding that "it is important that a judicial decree extinguishing such rights be based solely on competent evidence."

*A.J.R.-H.*, 188 A.3d at 1170-71 (citations omitted, footnote omitted).

In *A.J.R.-H.*, based upon the court's "several general references to its review and reliance upon the exhibits," as well as its express "reli[ance] upon information presented solely through the exhibits" in its written opinion, the Court found that the trial court in fact relied on the improperly admitted evidence. *Id.* at 1171-72.

Further, noting that the subject evidence consisted of 1230 pages of documentation, the *A.J.R.-H.* Court determined that "the contested evidence was unquestionably a much greater part of [the agency's] case in support of its petition to terminate" and "provided the foundation for the [trial] court to find clear and convincing evidence in support of termination under subsections (a) and (b) of the termination statute." *Id.* at 1175. As such, the Court concluded:

> Because the erroneous evidentiary ruling affected the [trial] court's decision to terminate Mother's parental rights to the Children, and the decrees were not based solely on competent evidence, the error of admitting the 167 exhibits was not harmless and we must remand the case for a new hearing on [the agency's] petition to terminate Mother's parental rights to the Children.

*Id.* (citation omitted).

By contrast, in this case, Appellant's arguments focus solely upon a single sentence in Ms. Cawley's testimony indicating that someone from the Agency had established contact with Appellant's mother. *Id.* There is no indication that the court relied upon this minor factoid in rendering its decision to involuntarily terminate Appellant's parental rights. Indeed, the Agency's arguable contact with Appellant's mother was not relevant to the termination of Appellant's parental rights. Rather, the court based its decision upon Appellant's failure to dispute his parentage or to avail himself to CUA despite two years of proceedings. As noted above, Appellant has not challenged the trial court's findings with respect to either Section 2511(a) or (b). As such, we find that any error in admitting Ms. Cawley's complained-of statement was harmless. We reiterate that inasmuch as Appellant was identified and not excluded as a potential father, he remained a putative father, requiring termination of his parental rights to free Child for adoption. *See* 23 Pa.C.S.A. § 2711; 23 Pa.C.S.A. § 2714.

For the foregoing reasons, we affirm the trial court's decree involuntary terminating Appellant's parental rights.

Decree affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>6/2/2025</u>